**Toraino SINGLETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–96–00344–CR.

Court of Appeals of Texas, El Paso.

Oct. 22, 1998.

Rehearing Overruled March 3, 1999.

---

Charles Louis Roberts, Lauren K.S. Murdoch, El Paso, for Appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Before Panel No. 2 BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from jury convictions on two counts of aggravated assault. Appellant

pleaded not guilty on the first count and guilty on the second count. The jury assessed punishment at twelve years' imprisonment in the Texas Department of Criminal Justice Institutional Division and a $5,000 fine on the first count, and ten years' imprisonment and a $9,000 fine on the second count. The jury made an affirmative finding of the use of a deadly weapon with regard to both counts. We affirm the judgment of the trial court.

## I. *SUMMARY OF THE EVIDENCE*

At trial, the State presented evidence that the incident that is the focus of this case occurred in the early morning hours of May 20, 1995 in an alley behind the My Generation Bar and Grill near the University of Texas at El Paso campus. David Santaella ("Santaella") and Daniel Driscoll ("Driscoll"), the two complainants, were in the alley with Brian Ramos and some other friends discussing arrangements for getting everybody to their homes. A car pulled into the alley and an individual identified as Lloyd Gardner ("Gardner") exited the car and began to urinate. There was an exchange of words. While there were varying depictions of the contents of the exchange, Gardner struck Brian Ramos on the head causing him to fall to the ground.

Appellant and another person then left the car and approached the other group. Appellant punched Santaella in the face with his fist rendering the complainant unconscious and breaking his jaw. Then, Appellant and two of his companions approached Daniel Driscoll. Appellant grabbed Driscoll by his arms and lifted him against a wall. He yelled at Driscoll, "Do you want some shit, too." Appellant released Driscoll. When he landed on the ground, Appellant punched him in the face with his fist and broke his nose.

After the State rested, Appellant presented his case. Jose Barbosa ("Barbosa"), one of Appellant's companions on the night of the incident, testified that when Lloyd Gardner was urinating in the alley, someone in the complainants' group of friends yelled some racial slurs at Gardner. Gardner went toward the group and hit one of the people in that group. As Barbosa and Appellant approached, an individual from the complainants' group tried to hit Gardner with a bat. Appellant hit that person. Barbosa testified that only two people in the complainants' group were hit—one by Gardner, and one by Appellant.

Lloyd Gardner testified in a similar vein. He stated that he struck one individual in the complainants' group of friends. Another person in that group came at him with a bat, and Appellant punched that person in the nose.

## II. *DISCUSSION*

In Points of Error Nos. One through Six, Appellant contends that the court erred in failing to adequately admonish Appellant regarding his guilty plea as required by Article 26.13 of the Texas Code of Criminal Procedure. After the jury was selected and sworn, the prosecutor read Count I of the indictment, the aggravated assault against David Santaella, to the jury. Appellant entered a plea of not guilty. After reading Count II of the indictment, the aggravated assault against Daniel Driscoll, Appellant personally entered a plea of guilty. The court did not give any admonishments at that time.

At the court's evening recess after the first day of trial, there was a charge conference. Counsel for Appellant stated that he was requesting charges on self-defense and defense of a third person. The court stated that because Appellant pleaded guilty to one count, it intended to direct a verdict of guilty to that count, and the charge regarding the other count would contain the normal language consistent with a plea of not guilty.

The following day after the State rested its case, the following exchange occurred:

THE COURT: Mr. Medrano, before you proceed, I just want to take up the issue of Mr. Singleton's guilty plea to Count II of the indictment, and just want to inquire of Mr. Singleton if he wishes to change his plea prior to the time you commence your case?

DEFENSE COUNSEL: We don't anticipate that at this particular point, but we will notify you within this period.

THE COURT: I just wanted to admonish Mr. Singleton. Of course, he's charged with aggravated assault, which is punishable by no less than two years in the penitentiary, no more that 20. There have, of course, been no recommendations made by the prosecutor because this was not a negotiated plea. It was a plea to the jury.

And is Mr. Singleton a citizen of the United States?

DEFENSE COUNSEL Yes, he is, Your Honor.

THE COURT: And is he—do you have any questions regarding his competency as to Count II?

DEFENSE COUNSEL: No, Your Honor.

THE COURT: And, obviously, we're trying him on Count I, so we presume that he is competent, and I will accept him as being competent. Very well. If he changes his mind either prior to the commencement of your case or prior to the submission of the charge to the jury, if you let me know, then we'll fix the jury charge so it is not a directed-verdict type situation charge on Count II.

Appellant then moved for a directed verdict regarding the two counts, and the court denied the motion. The court then inquired if Appellant desired to withdraw his guilty plea and Appellant's counsel stated that he did not.

Regarding the second count, the court's charge to the jury contained the following language:

The defendant, **TORAINO SINGLETON**, stands charged by count II of the indictment with the offense of AGGRAVATED ASSAULT, against DANIEL DRISCOLL alleged to have been committed in El Paso County, Texas on or about the 20th day of MAY, 1995.

To this charge the defendant has entered his plea of guilty. He has persisted in entering his plea of guilty, notwithstanding that the court, as required by law, has admonished him of the consequences. It plainly appearing to the court that the defendant is mentally competent, and that he makes this plea freely and voluntarily, his plea is by the court received. You are instructed to find the defendant guilty as charged in the indictment.

Appellant maintains that the court failed to comply with article 26.13 of the Texas Code of Criminal Procedure. Accordingly, Appellant reasons that Appellant was not aware of the effect of his guilty plea. Article 26.13 provides, in relevant part:

(a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:

(1) the range of the punishment attached to the offense;

(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. . . .

. . .

(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.

(b) No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary.

(c) In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court.

TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989).

 The purpose of article 26.13 is to assure that a defendant who pleads guilty understands the charges against him and the consequences of his plea. *Basham v. State*, 608 S.W.2d 677, 678 (Tex.Crim.App.1980). In accordance with article 26.13, before ac-

cepting a plea of guilty, the trial court must admonish the defendant regarding, among other things, the range of punishment attached to the offense. Tex.Code Crim. Proc. Ann. art. 26.13(a)(1) (Vernon 1989). However, the trial judge need not ask any certain questions nor follow any formula in order to substantially comply with article 26.13. *Richards v. State*, 562 S.W.2d 456, 458 (Tex. Crim.App.1977) (opinion on reh'g). The trial court need only substantially comply with the requirements of article 26.13. *Ex parte Smith*, 678 S.W.2d 78, 79 (Tex.Crim.App. 1984); *Richard v. State*, 788 S.W.2d 917, 920 (Tex.App.—Houston [1st Dist.] 1990, no pet.). When the trial court admonishes the defendant, substantial compliance is deemed, even if the admonishment is erroneous. *Smith*, 678 S.W.2d at 79. When a defendant makes a plea under an erroneous admonishment, it constitutes a prima facie showing that it was a knowing and voluntary plea. The burden then shifts to the defendant to show that he was misled or harmed by the faulty admonishment. *Id.; Richard*, 788 S.W.2d at 920. However, if no admonishment whatsoever was given, then the substantial compliance provision is not met. *Cain v. State*, 947 S.W.2d 262, 263 (Tex.Crim.App.1997).

Initially, Appellant contends that the court wholly failed to admonish Appellant regarding the range of punishment for the offense. Citing *Whitten v. State*, 587 S.W.2d 156, 157–59 (Tex.Crim.App.1979) (opinion on reh'g), *overruled, Cain*, 947 S.W.2d at 262, 263-64 and *Williams v. State*, 770 S.W.2d 81, 82-84 (Tex.App.—Dallas 1989, no pet.). Appellant reasons that there was no admonishment when Appellant entered his plea after the jury was selected and the admonishment given after the State rested its case was merely an aside to Appellant's attorney which was not directed to Appellant. In *Whitten*, there was no admonishment regarding the punishment range. The Court of Criminal Appeals held that the fact that the prosecutor commented upon the range of punishment during his voir dire presentation did not satisfy the requirements of article 26.13 because the admonishment must come from the trial court and must also be directed to the defendant. *Whitten*, 587 S.W.2d at 157–59. In *Williams*, the Dallas Court of Appeals ruled

that the requisites of article 26.13 were not met where the prosecutor was the primary source of the admonishment concerning the punishment range for three primary offenses and the accompanying enhancement paragraphs. *Williams*, 770 S.W.2d at 84.

▪ Initially, we note that although the court waited until the State rested to admonish Appellant, this does not constitute reversible error. *See Hardman v. State*, 614 S.W.2d 123, 126 (Tex.Crim.App.1981) (holding that the failure to admonish the defendant after accepting his guilty plea was vitiated by the court's subsequent admonishment and offer to allow the defendant to withdraw his plea; thus constituting substantial compliance); *see also Palacios v. State*, 556 S.W.2d 349, 350–52 (Tex.Crim. App.1977) (a case holding that it was not reversible error for the court to delay admonishing the defendant until both sides rested, but before the case was submitted to the jury).

Appellant maintains that the admonishment was not directed to him but was an aside to defense counsel. We do not read the record that way. The court began its admonishment with the statement, "I just want to admonish Mr. Singleton." The court then stated that the Appellant would be allowed to withdraw his plea at any time prior to the submission of the case to the jury. We find that the admonishment was given by the court to Appellant.

▪ When the admonishment regarding the punishment range was given, the court stated, "Of course, he's charged with aggravated assault, which is punishable by no less than two years in the penitentiary, no more than 20." While this informed Appellant of the proper range of potential prison time, there was no mention of a fine. However, an incomplete or erroneous admonishment regarding the punishment range can constitute substantial compliance where the trial court at least attempts to admonish the accused. *See Hughes v. State*, 833 S.W.2d 137, 140 (Tex.Crim.App.1992); *Ramos v. State*, 928 S.W.2d 157, 159–60 (Tex.App.—Houston [14th Dist.] 1996, no pet.); *Grays v. State*, 888 S.W.2d 876, 879 (Tex.App.—Dallas 1994,

no pet.). Accordingly, while the admonishment given to Appellant was incomplete, it substantially complied with article 26.13. Then, under article 26.13(c), the burden was upon Appellant to affirmatively demonstrate that he was not aware of the actual punishment range and that he was misled or harmed by the admonishment range given by the court. *Smith,* 678 S.W.2d at 79.

When the consequence of a defendant's plea relates to the range of punishment for the charged offense, in order to constitute an affirmative showing under article 26.13(c), a defendant must show by evidence grounded in a judicial record subject to review, both his lack of knowledge or understanding about the punishment range for his offense and, objectively, the manner in which he was misled or harmed. Depending on the particular case, the record of the plea hearing itself may provide sufficient evidence to show affirmatively these circumstances. *Cf. Hurwitz v. State,* 700 S.W.2d 919, 921 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986); *Grays,* 888 S.W.2d at 878. Of course, the posture of a case may be such that this burden cannot be met absent an evidentiary record developed independent of the plea hearing. *See* Tex.R.App. P. 30.

The record in the present case does not affirmatively demonstrate that Appellant was unaware of the punishment range or that he was misled or harmed by the admonishment. No such evidence is found in the record before us and no such contention appears in any of Appellant's motions for new trial. Accordingly, we find that the admonishment regarding the range of punishment substantially complied with article 26.13(a)(1).

Appellant asserts that the court erred by not determining whether Appellant entered his plea freely and voluntarily in violation of article 26.13(b). A guilty plea must be freely, voluntarily, and knowingly made on the part of the defendant. *Ex parte Evans,* 690 S.W.2d 274, 276 (Tex.Crim.App. 1985); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970); *White v. State,* 892 S.W.2d 223, 226 (Tex.App.—El Paso 1995, no pet.). This requirement assures that each defendant who pleads guilty to a criminal offense does so with a full understanding of charges and the consequences of his plea. *Basham,* 608 S.W.2d at 677–78; *White,* 892 S.W.2d at 226.

Citing *Williams,* Appellant contends that the court did not ask Appellant any questions concerning the voluntariness of the plea. *Williams,* 770 S.W.2d at 83–84. The determination of voluntariness is based upon a reading of the totality of the circumstances. *Ybarra v. State,* 960 S.W.2d 742, 745 (Tex.App.—Dallas 1997, no pet.); *Edwards v. State,* 921 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *Crawford v. State,* 890 S.W.2d 941, 944 (Tex. App.—San Antonio 1994, no pet.). An appellate court reviews the record as a whole. *Williams v. State,* 522 S.W.2d 483, 485 (Tex. Crim.App.1975); *Ybarra,* 960 S.W.2d at 745; *Fimberg v. State,* 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

First, we note that. it is not necessary under article 26.13(b) for the trial court to specifically inquire of an accused if his plea is being given freely and voluntarily. *See Basham,* 608 S.W.2d at 678–79; *Richards,* 562 S.W.2d at 458; *Rachuig v. State,* 972 S.W.2d 170, 177 (Tex.App.—Waco 1998, no pet. h.) (not yet reported). The court's charge to the jury stated that:

It plainly appearing to the court that the defendant is mentally competent, and that he makes this plea freely and voluntarily, his plea is by the court received. You are instructed to find the defendant guilty as charged in the indictment.

Also, we observe that Appellant pleaded not guilty to the first count indicating an understanding of the consequences of his plea. The trial court stated that he would allow Appellant to withdraw his plea up until the presentation of the case to the jury. The trial court was able to observe Appellant during the extended proceedings of the trial to the jury. Recitations found in the judgment and other portions of the record, including the charge to the jury, are binding on an Appellant in the absence of direct proof to the contrary, and the Appellant has the burden of overcoming the presumptions raised by the record in such cases. *See, e.g., Ex*

*parte Wilson,* 716 S.W.2d 953, 956 (Tex.Crim. App.1986); *Rachuig,* 972 S.W.2d at 177; *Brown v. State,* 917 S.W.2d 387, 390 (Tex. App.—Fort Worth 1996, pet. ref'd).

Appellant states that the trial court's admonishments were insufficient in that he did not understand the effect of his guilty plea to the second count of the indictment upon factual determinations and inferences which the jury could draw from and apply to the first count of the indictment. Apparently, he maintains that his guilty plea to Count II undermined his claims of self-defense, defense of a third person, and his argument that his fists were not deadly weapons with regard to Count I. Appellant's defensive evidence indicated that he struck only one individual—by implication, Driscoll. The testimony of Appellant's companions indicated that this individual came at Appellant with a bat. They indicated that he struck no other person. Appellant asserts that the trial court should have admonished him that he was, in effect, giving up his claims of self-defense and defense of a third person with regard to Count I, and, thereby rendering his plea involuntary.

■ We note that the charge to the jury on Count I included instructions on self-defense and defense of a third person. We find that the trial court had no such duty to admonish Appellant with regard to these defensive matters. They are clearly potential collateral consequences of his guilty plea. *See Ex parte Morrow,* 952 S.W.2d 530, 534–37 (Tex.Crim.App.1997). We find that Appellant has not overcome the presumption raised by the recitations and other evidence in the record and find that the plea was entered into freely and voluntarily.

Lastly, Appellant contends that Appellant was denied his due process rights under the United States Constitution. In *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 280 n. 5 (1969), the United States Supreme Court held that if an accused's plea of guilty is not obtained freely and voluntarily, a violation of various Federal Constitutional Rights occurs. In order to meet Constitutional standards, the trial record must affirmatively demonstrate that the plea was entered freely and voluntarily. The

voluntary nature of the plea cannot be determined from a silent record. *See id.,* 395 U.S. at 242–44, 89 S.Ct. at 1711–12, 23 L.Ed.2d at 279–80. As discussed above, the record is not silent regarding the voluntariness of Appellant's guilty plea. The record indicates that the plea was voluntary and the burden shifted to Appellant to demonstrate otherwise. Further, for the court to delve into collateral defensive matters concerning Appellant's trial strategy is not a function of the trial court. Accordingly, we overrule Points of Error Nos. One through Six.

In Points of Error Nos. Seven and Eight, Appellant maintains that the court erred in failing to grant a new trial based on the fact that a misunderstanding of the law caused the written verdict not to reflect the judgment of a majority of the jurors and the court erred in failing to grant a new trial in the interest of justice. In Points of Error Nos. Nine and Ten, Appellant contends that the court erred in refusing to hear evidence supporting a new trial based on the ground that a misunderstanding of the law caused the written verdict to not reflect the judgment of a majority of the jurors and the court erred in refusing to hear evidence supporting a new trial in the interest of justice.

The court's punishment charge to the jury included the following instruction:

In this case the defendant has filed, before trial, his motion in which he prays that in the event he is convicted that he be granted community supervision. If you find that he has not ever been convicted of a felony in this or any other State, and the punishment you assess is ten (10) years or less, and if you recommend community supervision be granted in this case, then let our verdict show the punishment which you assess and show that the defendant has never before been convicted of a felony in this or any other State, and further show that you recommend that he be given community supervision.

The charge also included the parole instruction mandated by TEX.CODE CRIM. PROC. ANN. art. 37.07(4)(a) (Vernon Supp.1998).

The court submitted various blank verdict forms for each count.

Verdict Form A–1 read:

### AS TO COUNT I

WE, the Jury, having found the defendant, TORAINO SINGLETON, guilty of AGGRAVATED ASSAULT in count I of the indictment, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of _____ years and a fine of $_____ (if any);

---

PRESIDING JUROR

Verdict Form A–2 read:

### AS TO COUNT I

WE, the Jury, further find that the defendant, TORAINO SINGLETON, has never heretofore been convicted of a felony in this State or any other State or the United States and recommend that *both* the sentence and fine, if any, be suspended and that the defendant be placed on Community Supervision.

---

PRESIDING JUROR

Verdict Form A–3 was the same as Verdict Form A–2, except that it provided that the sentence be probated but not the fine. The forms that applied to Count II, Verdict Forms B–1 through B–3, were identical to Forms A–1 through A–3. Prior to the arguments of counsel, the court read the charge and the verdict forms to the jury.

During argument, the prosecutor made the following statement:

The other thing I want to make very clear, you can assess the range of punishment for this crime, aggravated assault, second-degree felony, two years in the pen, 20 years in the pen. I don't want you to assume that if you assess a term of punishment at ten years or less that you must probate that, that you must put the defendant on probation. That's not correct. You can assess a term in the penitentiary anywhere from two years up to 20 years; two, three, four, five—all the way up.

Don't get confused about that. If you assess a term of eight years in the pen, eight years in the pen will be the assessment.

Now, the law also says, however, that if you assess a term of years of ten years or less, you may probate that, which means you'll put the defendant on community supervision, also known as probation, for a term of years that you've imposed. Okay.

During the course of deliberations, the jury sent out a note inquiring about parole. The note stated, "If Verdict Form A–1 is used under Texas Department of Criminal Justice for a period of two to ten years, will this be actual time of imprisonment and not be eligible for parole until one-half of the time is served? Please advise." After consulting with both parties, the court sent a note to the jury stating that the answer to their question was included in the charge and the jury was referred back to the charge. The jury returned Verdict Forms A–1 and B–1 in which they assessed punishment at twelve years' imprisonment and a fine of $5,000 on Count I, and ten years' imprisonment and a fine of $9,000 on Count II. After the verdicts were read in open court, the jury was polled and each juror responded that the verdict was his or her verdict.

Appellant filed his second amended motion for new trial alleging that the verdicts as to guilt and punishment were invalid because:

a. The verdicts were not decided by a fair expression of opinion by the jurors but rather under circumstances in which the jury was influenced by statements in the newspaper and other media before and during trial.

b. The verdict as to punishment entered by the Court was not the verdict unanimously agreed upon by the jury in the jury room, specifically: Jurors Ruben Nares, Norma Figueroa, Robert Garcia and Claudia Guerrero have given affidavits that the verdict entered by the Court was not their verdict. (See Exhibits A, B, C, & D). In addition, Jurors Enrique Ibarra and Chris Berry have also indicated that this was not their verdict but have declined to give affidavits. (See Exhibit E).

c. The Court's instructions to the jury in response to jury notes were confusing and legally erroneous.

The affidavits of these individuals, as well as the affidavit of Joe Bailon ("Bailon"), an investigator employed by Appellant's counsel, were attached to the second amended motion for new trial. All of the affidavits except Bailon's contained the following recitation:

> The verdicts of ten years confinement and twelve years confinement in the Texas Department of Criminal Justice Institutional Division were not my verdicts. If I had been specifically asked at the end of trial if my verdict was ten years confinement in the penitentiary and twelve years confinement in the penitentiary I would have answered, 'NO'.

At the bottom of Norma Figueroa's affidavit was a hand-written note stating, "My verdict was in form A–1 2 yrs. $5,000 fine B–1—10 years probation." Robert Garcia's affidavit contained the hand-written statement, "My verdict was 2 yrs in jail w/ $5000.00 fine and 10 yrs probation." Ruben Nares stated in a hand-written addition, "My verdict was ment [sic] to be on A–1 *2 yrs* of confinement *10 yrs* of probation. B–1 was to be 10 yrs of probation. Clarification was not given to me." (Emphasis in original). Claudia Guerrero's affidavit contained no additional notes.

The investigator, Joe Bailon, stated in his affidavit that another juror, Chris Berry ("Berry"), told him that the sentence given was not the sentence that Berry contemplated. Berry informed Bailon that he wanted Appellant to be placed on probation for a period of ten years and to serve a jail sentence of two years. He related to Bailon that he did not know how the two figures were totaled up to a sentence of twelve years in the penitentiary. Bailon stated that he also contacted juror Enrique Ibarra ("Ibar-ra"). Ibarra told Bailon that he was surprised by the sentence that was imposed on Appellant. He stated that he never meant for Appellant to serve twelve years in prison. Ibarra related that it was his understanding that he and the other jurors had sentenced Appellant to ten years' probation and two years in jail.

At the hearing on Appellant's motion for new trial, Appellant presented the testimony of juror Ruben Nares. Prior to his testimony, the State moved to strike the affidavits of the jurors on the ground they violated Rule 606(b) of the Texas Rules of Evidence.[1] The court ruled that it would allow the jurors to testify as to what the vote of the jury was but that he would not let them go beyond that and get into their mental processes or how they reached the verdict.

Juror Ruben Nares ("Nares"), the foreperson testified that the vote of the jury was "12." The court then sustained the prosecutor's objections and would not allow Nares to relate what he thought the end result of the verdict would be or what he or the other jurors thought the twelve-year verdict meant. Appellant perfected a bill of exceptions regarding what Nares thought the twelve-year verdict meant. Nares stated that he thought that the twelve-year verdict would amount to two years in prison and then the Appellant would be released on parole. He testified that the prosecutor had argued during the punishment stage of trial that any sentence of ten years or less meant automatic probation. He stated that when the jurors asked for clarification from the trial court if two to ten years meant automatic probation, the court did not provide an answer.

Nares testified that he explained to the other jurors three times that a twelve-year sentence actually meant two years in prison and all the other jurors agreed. He stated

---

1. Tex.R.Crim.Evid. 606(b) in effect at the time of trial provided:

 **Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any matter relevant to the validity of the verdict or indictment. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

that juror Elvira Lopez had stated that two to ten years meant automatic probation, although she did not maintain that she was stating the law.

Appellant placed juror Chris Berry on the stand. Over the State's objection, the court allowed Berry to testify that he thought the verdict was ten years' probation on Count II, and two years' prison time on Count I. The court sustained the State's objection when Berry started to testify if anyone represented what they thought the law was regarding probation. The court ruled that this matter was not contained in the affidavit, and allowed Appellant to make a bill of exception. Berry stated that a juror he thought to be Elvira Lopez stated that the first ten years was automatically probated.

Juror Gilbert Mebane ("Mebane") stated that the jury's vote was two years' jail time and ten years' probation on Count I. He stated there was unanimous agreement. The trial court refused to allow Mebane to testify if anyone had made a representation as to the law of parole and probation. In a bill of exception, he stated that someone, whom he could not recall, stated that the law operated such that any sentence below ten years was probated.

Juror Robert Garcia testified that the jury voted to assess Appellant two years' prison time and ten years' probation. In a bill of exception, he stated that he believed a twelve-year verdict amounted to two years in prison and the first ten years of the sentence would be probated. He stated this belief to other jurors and there was some discussion about what he had said. The witness stated that there was some discussion of good behavior time.

Juror Norma Figueroa testified in a bill of exception that she thought the verdict was for two years' prison time. She stated that she thought she heard someone state that any sentence of ten years or less was automatically probated although there were differing opinions. She stated that everyone's verdict was for two years' prison time.

Juror Enrique Ibarra was not allowed to testify because there was no affidavit on file. In a bill of exception, he stated that he agreed to a two-year maximum sentence. He testified that the jury believed that a verdict of ten years or less would automatically be probated and that this understanding came from a reading of the charge.

Juror Claudia Guerrero testified in a bill of exception that the jury agreed that Appellant should be sentenced to two years' prison time. She stated that the jury thought from reading the charge that any sentence less than ten years would automatically be probated.

Juror Maria Ortiz was not allowed to directly testify as there was no affidavit on file. In a bill of exception, she stated that the jury agreed on a sentence of two years' imprisonment.

Juror Elvira Lopez ("Lopez") testified for the State. She stated that she understood that the verdicts meant that Appellant was to serve ten and twelve years in prison. She stated that she thought that was the verdict of all the jurors because they all wrote it down. She denied telling the other jurors that any sentence up to ten years was automatically probated. She stated that any juror who so stated was lying. Although Lopez indicated that there was some discussion of parole, she testified that it was not the agreement of the jurors to give Appellant only two years in prison, and the jury's vote was not intended to allow for any probation whatsoever.

The court deferred ruling on Appellant's motion for new trial. The court stated that the jury charge clearly and specifically instructed the jury that if they desired to give Appellant probation, they had to recommend it by using the proper verdict form. The court stated that it could not understand how the jurors could not understand the charge. However, the court stated that it was of concern that eight of the jurors came in and said that they never intended to send Appellant to the penitentiary for a period of twelve years. The court indicated that it was going to weigh the competing interests of the finality of judgments with his concern that a penitentiary sentence of twelve years was handed down which was not intended. The court stated that it was going to consider all

of these interests. The court later denied the motion.

As stated, in Point of Error No. Ten, Appellant contends the court erred in limiting evidence at the hearing on Appellant's contention that a new trial should have been granted in the interest of justice. With regard to this contention, the State asserts that as Appellant's second amended motion for new trial did not allege that ground for new trial, it was not properly before the court. We agree.

■ Even though the "interest of justice" is not a ground for new trial enumerated in Tex.R.App. P 21.3,[2] a court may grant a motion for new trial on that ground. *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex.Crim. App.1993). During the hearing on the motion for new trial, the State objected that Appellant had not pleaded that he should be granted a new trial in the interest of justice in his motion. In *Gonzalez*, the Court of Criminal Appeals held that a defendant is required to plead in the motion for new trial the specific grounds relied upon in requesting a new trial so that fair and adequate notice is given to the adverse party so that the adverse party may properly prepare a defense. *Id.* at 694–95. In that case, the movant requested a new trial in the interest of justice to present additional witnesses. *Id.* at 695. The court held that the allegation was sufficient to notify the trial judge and the State as to why the movant sought a new trial. *Id.*

■ In the present case, the sole pertinent ground alleged in Appellant's second amended motion for new trial stated that the punishment verdicts were decided in a manner other than by a fair expression of the jurors' opinion. This is one of the enumerated grounds found in Tex.R.App. P. 21.3. By including this ground in his motion, Appellant implicitly excluded other grounds such as those grounds "in the interest of justice." It can hardly be said that fair notice is given to the other parties if, after the fact, an "in the interest of justice" assertion can be tacked on to any pleading alleging the grounds contained in Tex.R.App. P. 21.3.

While we do not restrict an "in the interest of justice" ground for motion to new trial to any particular matter before the court, that matter must be pleaded. Accordingly, the "in the interest" ground should have been pleaded and, as it was not, the contention was not properly before the court. Point of Error No. Ten is overruled.

■ In Point of Error No. Nine, Appellant maintains that the court erred in limiting evidence at the hearing on the motion for new trial based on the allegation that because of a misunderstanding of the law, the written verdict did not reflect the judgment of a majority of the jurors. The evidence was limited during the hearing based upon the court sustaining objections of the State, in varying instances, that the evidence was not contained in the affidavits in support of the motion for new trial or that the testimony impeached the verdict in violation of Tex. R.Crim.Evid. 606(b) as it existed at the time of trial. The court allowed Appellant to make a complete bill of exceptions regarding the testimony of each juror. We note that the court stated in its remarks that at the close of the hearing on the motion for new trial that it was concerned that Appellant would have to serve a jail term that was not intended and he intended to consider that in his deliberations on his ruling. We find that this statement indicated that the court intended to consider the entire range of the testimony presented at the hearing including the testimony contained in the bill of exceptions. Point of Error No. Nine is overruled.

■ In Point of Error No. Seven, Appellant contends that the court erred in failing to grant a new trial based on the fact that because of a misunderstanding of the law that the written verdict did not reflect the judgment of a majority of the jurors. It is well established that the granting or denying of a motion for new trial lies within the discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *Gonzalez*, 855 S.W.2d at 696. An appellate court does not substitute its judgment for that of the trial court, but rather decides whether the trial court's decision was arbitrary or

---

2. Formerly Tex.R.App. P. 30(b).

unreasonable. *Lewis,* 911 S.W.2d at 7; *Gonzalez,* 855 S.W.2d at 695 n. 4. The trial court is the sole judge of the credibility of the testifying jurors at the hearing on motion for new trial. *Lewis,* 911 S.W.2d at 7; *Thomas v. State,* 699 S.W.2d 845, 854 (Tex.Crim.App. 1985). "Where there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue and there is no abuse of discretion in overruling the motion for new trial." *Lewis,* 911 S.W.2d at 7; *Thomas,* 699 S.W.2d at 854.

▆ To show reversible error based on improper jury discussion, the defendant must prove the existence of the following factors:

(1) a misstatement of the law;

(2) asserted as a fact;

(3) by one professing to know the law;

(4) which is relied upon by other jurors;

(5) who for that reason changed their vote to a harsher punishment.

*Sneed v. State,* 670 S.W.2d 262, 266 (Tex. Crim.App.1984); *Buentello v. State,* 826 S.W.2d 610, 614 (Tex.Crim.App.1992).

In the present case, we fail to perceive how any of the testimony of the jurors indicates that one professing to know the law asserted a factual misrepresentation of the law. While there was conflicting evidence regarding the issuance of statements regarding the effect of the parole and probation laws, we fail to see an instance where someone professed to know the law. Further, juror Elvira Lopez indicated that there was no misconception concerning the effect of the verdict. The court as fact finder could choose to believe her testimony. The prosecutor's punishment argument, the record of which was placed into evidence at the motion for new trial hearing, did not in any way suggest that a sentence under ten years was automatically probated. Accordingly, we find no abuse of discretion. Point of Error No. Seven is overruled.

In Point of Error No. Eight, Appellant asserts that the court erred in failing to grant a new trial based on the interest of justice. As we have held that this issue was not properly before the court, we overrule Point of Error No. Eight.

In Points of Error Nos. Eleven and Twelve, Appellant asserts that the court erred in refusing to grant a new trial because of unauthorized contact between law enforcement officers and a sequestered juror and the court erred in refusing to hear evidence with regard to the unauthorized contact between law enforcement officers and a sequestered juror. At the end of the first day of jury deliberations on the punishment phase, the jury was sequestered. During the second day of deliberations, the court stated, outside the presence of the jury:

COURT: Also, I want to report to both sides that last night—or as least this morning, Mr. Limas [the bailiff] tells me that one of the jurors was reading her Bible and in the Bible found an envelope addressed to the El Paso Police Department indicating that somebody, named Karina, 'had nothing to do with what happened here.' 'Don't blame her.' So Mr. Limas contacted the police department. They made a contact to the hotel and spoke briefly with the juror. It's juror Norma Gomez. I don't have the jury list, so I can't tell you what number she is. The police department made a brief contact with her, picked up the evidence, photographed the room and crime scene is—looking at the room. I'm not sure there is anything to that or not; probably is not. But I thought I would advise you of that so that you all are aware.

STATE: I don't understand, Judge.

COURT: Because there was contact from the outside—

STATE: Oh, I see.

COURT: —outside from my bailiff. So I didn't want that to come to light later and ask me why I didn't advise you of it.

DEFENSE: Your honor, based on the fact that while the jury was in deliberation, contact with the sequestered jury, or an individual juror was made, other than with the bailiff, we would—on behalf of Mr. Singleton, we would move for a mistrial at this time.

COURT: The Court's going to deny that, Mr. Medrano.

DEFENSE: Thank you, Your Honor.

COURT: Mr. Limas, just so it is clear, the Bible she opened was not her Bible?

DEFENSE: It was at the Travelodge.

In Appellant's second amended motion for new trial, he alleged that the jury's verdict was not decided by a fair expression of the opinion of the jurors due to "extensive inappropriate contact with jurors" by unauthorized persons during the jury's deliberations. Specifically, "members of the El Paso Police Department made contact with sequestered Juror Norma Gomez, in a manner which was not subject to supervision or, monitoring, or even knowledge of defense counsel." This allegation was not supported by an affidavit.

At the hearing on motion for new trial, Officer Sal Vega, Jr. ("Vega"), a patrolman with the El Paso Police Department testified at the request of Appellant. The prosecutor objected to any testimony of the officer in that there was no affidavit supporting the allegation. The court sustained the objection and allowed Appellant to make a bill of exception. The officer then testified that he was called to the motel and met with the court's bailiff and was told a juror had found a note in a Bible. Vega spoke with that juror out of the presence of other jurors and he did not speak to other jurors. On cross-examination by the prosecutor, Vega stated that his conversation was not related to Appellant's case.

The mere filing of a motion for new trial is insufficient to require the trial court to conduct a hearing or receive testimony on a matter outside the record absent an affidavit of a person in a position to know the facts. *Cuellar v. State*, 943 S.W.2d 487, 491 (Tex. App.—Corpus Christi 1997, pet. ref'd). Accordingly, the court did not err or abuse its discretion in refusing to hear evidence on the issue.[3] In light of this determination, we do not reach Point of Error No. Eleven. Points of Error Nos. Eleven and Twelve are overruled in their entirety.

Having overruled each of Appellant's Points of Error, we affirm the judgment of the trial court.

---

3. Appellant cites to *Reed v. State*, 841 S.W.2d 55 (Tex.App.—El Paso 1992, pet. ref'd) for the proposition that if an allegation of juror misconduct is known to the court, this will sometimes obviate the necessity of the attachment of an affidavit to the motion for new trial. *Id. at* 58. However, we note that in *Reed*, there was no objection from the State regarding the procedure utilized. *Id.* Here, the State objected to the introduction of the evidence.