COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

CHRISTOPHER PATRICK O=CONNOR,          )

                                                                              )              
No.  08-03-00319-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
203rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0140590-HP)

                                                                              )

 

 

O
P I N I O N

 








In this
consolidated appeal, Appellant Christopher Patrick O=Connor
appeals from  separate convictions of two
counts of aggravated sexual assault of a child and fourteen counts of
possession of child or promotion pornography.[1]  As grounds for reversal, Appellant argues
that the trial court erred in its denial of his motion to suppress, and that
the trial court failed to comply with Tex.Code
Crim.Proc.Ann. art. 26.13(b) by failing to assure itself that Appellant
was mentally competent and his plea was given freely and voluntarily.  Appellant also seeks reversal of the
possession of child pornography convictions on the basis of double jeopardy
claims under the United States Constitution and the Texas Constitution.  We affirm.

On the evening of
July 23, 2001, the Mesquite Police Department executed a search warrant of
Appellant=s
residence in connection with information provided to them that Appellant was in
possession of child pornography.[2]  The search warrant listed numerous items
believed to contain child pornography including computer related sources.  When police arrived at Appellant=s home, they discovered no one was home
and proceeded to kick in the front door and search the premises.  They seized Appellant=s
computer, computer discs, and other items listed on the search warrant.








While the
equipment seized was being loaded into the police vehicles, Appellant
arrived.  Detective Michael Parker, an investigator
with the Mesquite Police Department, approached him and briefly explained the
reason police officers were at his home. 
According to Appellant=s
testimony at the motion to suppress hearing, Detective Parker vaguely informed
him that they had reason to believe there were questionable materials in his
home and therefore his computer was seized. 
Detective Parker testified that he could not remember if he specifically
mentioned child pornography.  Detective
Parker then asked Appellant to accompany him to the police station which
according to Detective Parker, Appellant did so voluntarily.  Appellant, however, testified that when he
was asked to go to the police station, he did not have the impression that he
was free to leave.  Appellant testified
that while he was not told he was under arrest and did not feel under arrest at
the time, he also did not feel free to leave. 
According to Detective Parker=s
testimony, Appellant was not under arrest at this time.

Appellant was
transported to the police station in a police vehicle.  Upon arriving at the police station,
Appellant was taken to an interview room. 
According to Detective Parker, they had a conversation about the search
warrant executed on Appellant=s
home and the source of the information that led to such action.

Detective Parker
testified that he read Appellant his Miranda rights.  Appellant indicated to Detective Parker that
he had downloaded some inappropriate material from the internet to his computer
and if his computer was searched, such items would probably be found.  Although Appellant knew his computer would be
searched and could actually see some officers searching his computer as he was
being interviewed, he never once objected. 


Appellant then
agreed to provide a written statement. 
Before allowing him to do so, Detective Parker testified that he once
again gave the Appellant his Miranda rights.  Once Appellant had written his statement,
Detective Parker asked two civilian dispatchers to witness the signing of
Appellant=s
statement.  In the presence of the
witnesses, Detective Parker read out loud the document to Appellant and asked
him if those were his own words and his handwriting.  Appellant replied affirmatively to both
questions.  Detective Parker then asked
Appellant if there was anything he wanted to add or change to his statement and
Appellant replied no.  Appellant then
signed the statement while the witnesses were still present.








During this time,
Appellant was calm and appeared only a little nervous.  At no moment during the interview, did
Appellant ask to terminate the conversation and he never asked for an attorney.  Throughout this entire process, Appellant was
not under arrest and was free to leave. 
Detective Parker testified that Appellant would have been given a ride
back to his home or he could have called someone to pick him up at the station.

Appellant=s narrative of this event offers a
slightly different account.  According to
Appellant, after waiting in the interview room for a few minutes, Detective
Parker entered and told him that they knew he had images in his computer and
that they wanted to know if he had anything else.  Detective Parker then told him that they were
going to have a conversation but that it could be terminated anytime upon his
request.  Appellant was also told he had
a right to an attorney, but he was not told that he could leave.  He testified that he never heard any of the
formal Miranda rights read to him. 
Even prior to writing his statement, Appellant testified that he was not
given any Miranda warnings.  He
did testify however that the statement was his own and that he was not told
what to write.  On cross-examination,
Appellant testified that before writing his statement, he did in fact read the Miranda
warnings provided at the top of the document in which he wrote his statement in
and that there was nothing about the warnings he did not understand.  Appellant testified that while being
interviewed, he felt like he was under arrest, even though no one told him he
was under arrest.  

The total amount
of time Appellant spent at the police station was approximately one hour.  At no moment in the entire evening was the
Appellant handcuffed.  After Appellant
provided his written statement, he was driven home by a police officer.








The search of
Appellant=s
computer uncovered MPEG files depicting children with the background identical
to the surroundings of Appellant=s
home.  Detective Parker testified that
the pictures were not pornography in nature but that one, for example, was of a
young boy, around five years old, pulling down his pants and using
profanity.  Appellant=s statement along with these
photographs led police to investigate further. 
The individuals in the photographs were later identified as being
related to the Appellant.  As a result of
this investigation, Appellant was later charged with aggravated sexual
assault.  

Based on the
information that had been gathered, later that same week, police executed an
additional search warrant of Appellant=s
home.  The second warrant was served and
again no one was home.  The police
therefore entered through the front door, which according to Detective Parker
had not been properly secured from the first time they kicked it in to execute
the first search warrant.  This time,
they seized a box of photographs.  

Appellant was
charged with two counts of aggravated sexual assault and fourteen counts of
possession of child pornography. 
Appellant filed a motion to suppress the oral and written statements he
had given to the police.  On March 17,
2003, the trial court held a hearing on Appellant=s
motion to suppress which it denied.  On
April 28, 2003, Appellant waived his right to a jury trial and entered a plea
of guilty for all offenses.  Upon the
Appellant=s
election, the trial court sentenced him to life in prison on the aggravated
sexual assault charges and to ten years=
confinement and a $5,000 fine for each of the possession of child pornography
charges.   Appellant now timely appeals.

Motion
to Suppress








In Issue One,
Appellant contends the trial court erred in denying his motion to suppress his
statements.  Specifically, Appellant
argues that his written statement was a direct result of an illegal detention
and therefore inadmissible.  The State
contends that the statement was not a product of an illegal detention, but
rather that Appellant voluntarily accompanied the officers to the police
station and provided them with a written statement.  Appellant maintains that the State has failed
to meet its burden of showing that the voluntary statement was not a product of
an unlawful detention.  See Brown v.
Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Beasley v.
State, 674 S.W.2d 762, 769 (Tex.Crim.App. 1982).

Standard
of Review

A trial court=s ruling on a motion to suppress is
generally viewed for an abuse of discretion. 
Villareal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); Brewer
v. State, 932 S.W.2d 161, 166 (Tex.App.--El Paso 1996, no pet.).  Under this standard, we give almost total
deference to the trial court=s
determination of historical facts, especially when the court=s findings are based on an evaluation
of credibility and demeanor.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997); Gordon v. State, 4
S.W.3d 32, 35 (Tex.App.--El Paso 1999, no pet.).  On a motion to suppress evidence, the trial
judge is the sole trier of fact and judge of the credibility of the witnesses,
including what weight, if any, is to be given to their testimony.  See Bradley v. State, 960 S.W.2d 791,
800 (Tex.App.--El Paso 1997, pet. ref=d).  Consequently, the trial court may choose to
believe or disbelieve any or all of a witness=s
testimony.  See Villarreal, 935
S.W.2d at 138.  We review de novo the
trial court=s
conclusions of law and the application of those principles to the facts which
do not turn on an evaluation of credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856
(Tex.Crim.App. 2000); Guzman, 955 S.W.2d at 89.








Whether Appellant=s statements were not voluntary is only
an issue if the information was the result of a custodial interrogation.  Rodriguez v. State, 939 S.W.2d 211,
215 (Tex.App.--Austin 1997, no pet.); Morris v. State, 897 S.W.2d 528,
531 (Tex.App.--El Paso 1995, no pet.); Holland v. State, 770 S.W.2d 56,
58 (Tex.App.--Austin 1989), aff=d,
802 S.W.2d 696 (Tex.Crim.App. 1991).  If
Appellant=s
statements do not stem from custodial interrogation, neither Miranda nor
Article 38.22 require their suppression. 
See Tex.Code
Crim.Proc.Ann. art. 38.22, '
5 (Vernon Supp. 2004)(expressly excluding statements occurring outside of
custodial interrogations).  Therefore,
our first determination is whether Appellant was in custody at the time he made
the written statement.

Whether a
statement is the product of custodial interrogation must be determined on an ad
hoc basis after considering all of the objective, as opposed to subjective, facts
and circumstances.  Dowthitt v. State,
931 S.W.2d 244, 255 (Tex.Crim.App. 1996). 
In Miranda, the United States Supreme Court defined Acustodial interrogation@ as Aquestioning
initiated by law enforcement officers after a person has been taken into
custody or otherwise deprived of his freedom of action in any significant way.@ 
Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16
L.Ed.2d 694, 706 (1966).  A person is Ain custody@
if, under the circumstances, a reasonable person would believe his freedom of
movement was restrained to the degree associated with a formal arrest.  Stansbury v. California, 511 U.S. 318,
322‑24, 114 S.Ct. 1526, 1528‑30, 128 L.Ed.2d 293, 298‑99
(1994); Dowthitt, 931 S.W.2d at 254. 
The reasonable person standard presupposes an innocent person.  Florida v. Bostick, 501 U.S. 429, 438,
111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991); Dowthitt, 931 S.W.2d at
254.  The United States Supreme Court has
clearly held that the determination of custody is based entirely on objective
circumstances.  Stansbury, 511
U.S. at 322-23, 114 S.Ct. at 1528-29.








When a person is
transported to a law enforcement facility by an officer in the course of an
investigation, if the person was acting upon the invitation, request, or even
the urging of an officer and there were no threats that he would be taken in a
forcible manner, and the accompaniment is voluntary, then the individual is not
in custody.  Anderson v. State,
932 S.W.2d 502, 505 (Tex.Crim.App. 1996); Bradley, 960 S.W.2d at
801.  Stationhouse questioning does not,
in and of itself, constitute custody.  California
v. Beheler, 463 U.S. 1121, 1124‑25, 103 S.Ct. 3517, 3519‑20, 77
L.Ed.2d 1275 (1983); Dowthitt, 931 S.W.2d at 255.  However, police conduct during the encounter
may cause a consensual inquiry to escalate into custodial interrogation.  Ussery v. State, 651 S.W.2d 767, 770
(Tex.Crim.App. 1983); Bradley, 960 S.W.2d at 801; State v. Rodriguez,
986 S.W.2d 326, 329 (Tex.App.--El Paso 1999, pet. ref=d).

The Court of Criminal
Appeals has identified four general situations which may constitute
custody:  (1) when the suspect is
physically deprived of his freedom of action in any significant way; (2) when a
law enforcement officer tells the suspect that he cannot leave; (3) when law
enforcement officers create a situation that would lead a reasonable person to
believe that his freedom of movement has been significantly restricted; and (4)
when there is probable cause to arrest and law enforcement officers do not tell
the suspect that he is free to leave.  Shiflet
v. State, 732 S.W.2d 622, 629 (Tex.Crim.App. 1985); Rodriguez, 986
S.W.2d at 329.  In situations one through
three, the restraint on freedom must be that associated with an arrest and not
simply an investigative detention; in situation four, the officer=s knowledge of probable cause must be
manifested to the suspect, and such manifestation, considered in the totality
of the circumstances, would lead a reasonable person to believe he is no free
to leave.  See Dowthitt, 931
S.W.2d at 255, citing Shiflet, 732 S.W.2d at 629.








At the suppression
hearing, the State introduced the evidence of Sergeant Bruce Bradshaw and
Detective Michael Parker.  Sergeant Bruce
Bradshaw testified that he was present when the search warrant of Appellant=s home was executed.  He testified that Appellant arrived as seized
items were being loaded unto police vehicles. 
He testified that Appellant was not placed under arrest.

Detective Parker
testified that he approached Appellant when he arrived at his residence as the
search warrant was being carried out.  He
testified that he explained to the Appellant why the police were there and asked
the Appellant to accompany him to the police station.  According to Detective Parker, Appellant did
so voluntarily.  Appellant was not placed
under arrest at this time.  Appellant was
transported to the police station in a police vehicle.  Detective then took Appellant to an interview
room and soon thereafter, advised Appellant of his Miranda rights.  After agreeing to make a written statement,
Appellant was given a document to write his statement on, which at the top,
contained written Miranda rights. 


Appellant,
testifying on his own behalf at the hearing, did not dispute that he
voluntarily went to the police station. 
He did however testify that with all the people around his home, he was
not given the impression that he was free to leave.  He then testified that no one told him he was
under arrest and that he did not feel under arrest at the time.  Once at the police station, Appellant
testified that he was not given formal Miranda warnings, except that he
was told he had a right to an attorney. 
Additionally, he testified that by this time, he felt he was under
arrest.  On cross-examination, Appellant
testified that he read the Miranda rights on top of the document on
which he wrote his statement and that nothing about them was unclear to
him.  He also testified that he did not
want an attorney at that time.  








Appellant was only
in custody approximately one hour.  See
Nenno v. State, 970 S.W.2d 549, 557 (Tex.Crim.App. 1998)(noting that a one
hour interview is a short time period). 
There is no evidence that Appellant was threatened or coerced while
being interviewed or in order to provide a statement.  At no moment in time was Appellant
handcuffed.  

After examining objectively
the circumstances surrounding Appellant=s
statement, we cannot conclude that a reasonable person in Appellant=s position would have believed that his
freedom of movement had been restrained to the degree associated with a formal
arrest.  While Appellant does offer
conflicting testimony regarding whether Miranda rights were given to
him, the trial court, as the sole trier of fact and judge of the credibility of
the witnesses may choose to believe or disbelieve any or all of a witness=s testimony.  See Bradley, 960 S.W.2d at 800.  In light of these factors, we cannot conclude
Appellant was in custody at the time he gave his statement.  Accordingly, we find no error in the trial
court=s
admission of Appellant=s
written statement.  We therefore overrule
Issue One. 

Mental
Competency

In Issue Two,
Appellant contends that the trial court erred in accepting his guilty plea
without first determining whether he was mentally competent and whether his
plea was free and voluntary in compliance with Tex.Code Crim.Proc.Ann. art. 26.13(b).  Appellant argues that the nature of the
offense he was charged with indicated that Appellant may have had a mental
problem and that in his written confession, Appellant asserts that he would
seek professional help to overcome his problem.








Article 26.13(b)
of the Texas Code of Criminal Procedure provides:  ANo
plea of guilty or plea of nolo contendere shall be accepted by the court unless
it appears that the defendant is mentally competent and the plea is free and
voluntary.@  Tex.Code
Crim.Proc.Ann. art. 26.13(b)(Vernon Supp. 2004).  We initially observe that Article 26.13 does
not require the court to ask a defendant anything.  Rachuig v. State, 972 S.W.2d 170, 177
(Tex.App.--Waco 1998, pet. ref=d).  The voluntariness of a guilty plea is
determined from the totality of the circumstances viewed in light of the entire
record.  Ybarra v. State, 960
S.W.2d 742, 745 (Tex.App.‑‑Dallas 1997, no pet.); Singleton v.
State, 986 S.W.2d 645, 651 (Tex.App.‑‑El Paso 1998, pet. ref=d). 
Thus, the trial court need not specifically inquire if a plea is being
given freely and voluntarily.  Singleton,
986 S.W.2d at 651.  Likewise, unless an
issue is made of a defendant=s
present mental competence at the time the plea is entered, the trial court need
not specifically inquire into his mental competence.  Sims v. State, 783 S.W.2d 786, 788
(Tex.App.‑‑Houston [1st Dist.] 1990, no pet.), citing Kuyava v.
State, 538 S.W.2d 627, 628 (Tex.Crim.App.1976).  The court=s
failure to directly ask Appellant any questions is not deemed to rebut the
presumption raised by the record that the trial court believed Appellant was
competent and acting freely and voluntarily when he entered his guilty
plea.  See Rachuig, 972
S.W.2d at 177, citing Brown v. State, 917 S.W.2d 387, 390 (Tex.App.‑‑Fort
Worth 1996, pet. ref=d).








In this case,
Appellant did not put his mental state at issue at the time the plea was
entered, and there is no indication in the record that he was incompetent to
enter his plea.  The trial court had an
opportunity to observe Appellant in open court, to hear him speak, and note his
demeanor.  The trial court was also made
aware that Appellant had a four-year college education. The trial court also
ensured itself that Appellant=s
pleas were voluntary by asking Appellant numerous times whether they were
before accepting his pleas.  Before
entering its decision as to Appellant=s
guilt, the trial court noted that it believed the Appellant was mentally
competent and that his waiver of right to jury trial, his guilty plea, and
signed written confession were all freely and voluntarily made.  Furthermore, the issue of Appellant=s mental competence was never raised at
trial.  While the trial court did not
specifically inquire as to the Appellant=s
mental competency, the trial court=s
failure to directly ask Appellant whether he was mentally competent is
insufficient to rebut the presumption raised by the record.  See Rachuig, 972 S.W.2d at 177; Singleton,
986 S.W.2d at 651.  Recitations found in
the judgment and other portions of the record, including the charge to the
jury, are binding on an Appellant in the absence of direct proof to the
contrary, and the Appellant has the burden of overcoming the presumptions
raised by the record in such cases.  See
Rachuig, 972 S.W.2d at 173.  We find
that Appellant has failed to overcome the presumption of his mental competency
as shown by the record in this case. 
Accordingly, we overrule Issue Two.

Double
Jeopardy

In Issue Three,
Appellant alleges that his multiple convictions of possession of child
pornography, specifically regarding the depiction of deviate sexual intercourse
charges, violate his right to be free from double jeopardy under the United
States Constitution.  In Issue Four,
Appellant makes the same argument as in Issue Three except with regards to the
convictions regarding the possession of child pornography depicting lewd
exhibition of his genitals.  In Issue
Five, Appellant raises the same double jeopardy arguments he raises in Issues
Three and Four except, he raises the issue under the Texas Constitution and the
Texas Code of Criminal Procedure Article 1.10.








We note initially
that the Court of Criminal Appeals has indicated that the federal and state
prohibitions against double jeopardy are identical conceptually.  See Phillips v. State, 787 S.W.2d 391,
393 n.2 (Tex.Crim.App. 1990).  The double
jeopardy ban under the Texas Constitution affords no broader protection than
the federal constitution and does not require separate analyses.  See Stephens v. State, 806 S.W.2d 812
, 815 (Tex.Crim.App. 1990).  

The Fifth
Amendment of the United States Constitution provides that no person shall Abe subject for the same offense to be
twice put in jeopardy of life of limb . . . .@  U.S.
Const. amend. V.  Article I, sec.
14 of the Texas Constitution states:  ANo person, for the same offense, shall
be twice put in jeopardy of life or liberty, nor shall a person be again put
upon trial for the same offense, after a verdict of not guilty in a court of
competent jurisdiction.@  Tex.Const.
art. I, ' 14.  These protections apply to:  (1) a second prosecution for the same offense
after acquittal; (2) a second prosecution for the same offense after
conviction; and (3) multiple punishments for the same offense.  Ex Parte Rhodes, 974 S.W.2d 735, 738
(Tex.Crim. App. 1998); Moncada v. State, 960 S.W.2d 734, 741
(Tex.App.--El Paso 1997, pet. ref=d).  The arguments raised by Appellant in this
case involves the prohibition of multiple punishment for the same offense.   

Appellant is
appealing fourteen separate convictions of possession of child
pornography.  Appellant pled guilty to
all charges before the trial court. 
After holding a punishment hearing, the trial court assessed punishment
at confinement for ten years and a $5,000 fine for each offense.

Appellant was
charged under fourteen indictments.  Each
indictment alleged separate but identical offenses that took place on or about
July 23, 2001.  Six of the indictments
provided that Appellant intentionally and knowingly possessed, 








[V]isual material, to-wit:  a disk that allows an image to be displayed
on a computer, namely, a computer hard drive, that visually depicted, and which
the defendant knew visually depicted, a child who was younger than 18 years of
age at the time the image of the child was made, engaging in sexual conduct,
to-wit:  deviate sexual intercourse.   [Emphasis added].

 

Similarly, seven of the indictments
allege that Appellant intentionally and knowingly possessed, 

[V]isual material, to-wit:  a disk that allows an image to be displayed
on a computer, that visually depicted, and which the defendant knew visually
depicted, a child who was younger than 18 years of age at the time the image of
the child was made, engaging in sexual conduct, to-wit:  lewd exhibition of the genitals.
[Emphasis added].

 

A single indictment alleged that
Appellant intentionally and knowingly possessed, 

[V]isual material,  to-wit: a disk that allows an image to be
displayed on a computer, that visually depicted, and which the defendant knew
visually depicted, a child who was younger than 18 years of age at the time the
image of the child was made, engaging in sexual conduct, to-wit:  masturbation.  [Emphasis added].

 

Appellant now
complains that the State violated his constitutional right against double
jeopardy when it convicted and punished him multiple times for the same
offense.  Appellant however failed to
make a timely request, objection, or motion before the trial court on the issue
of double jeopardy.  See Tex.R.App.P. 33.1.  A double jeopardy claim is forfeited if it is
raised for the first time on appeal unless the double jeopardy violation is
clearly apparent on the face of the record and when enforcement of usual rules
of procedural default serves no legitimate state interests.  Gonzalez v. State, 8 S.W.3d 640, 643
(Tex.Crim.App. 2000).








In this case, we
do not find an apparent double jeopardy violation on the face to the
record.  We find Vineyard v. State[3],
to be controlling in this case.  In Vineyard,
the defendant was convicted on two charges of child pornography:  for possessing both a videotape and a
photograph depicting a child engaging in sexual conduct.  See Vineyard, 958 S.W.2d at 835.  The issue before the Court was whether, as a
matter of statutory interpretation of [Texas] law, appellant=s simultaneous possession of both the
videotape and the photograph constitutes more than one offense.  Vineyard, 958 S.W.2d at 837.  The Court held that the Legislature intended
in cases like this to make possession of each item of child pornography an
allowable unit of prosecution.  Id.
at 838.

In this case,
Appellant=s
convictions were based on different images of child pornography, some of which
depicted the same type of conduct.  The
images however were not identical.  We do
not find Vineyard distinguishable from this case simply because in Vineyard,
there was a videotape and a photograph and here we have multiple
photographs.  It makes no difference that
the items in question are all photographs or all videotapes.  Vineyard plainly holds the fact that
the possession was simultaneous does not bar prosecution for each and every
single item of child pornography.  See
id. at 838.  In accordance with Vineyard,
we overrule Issues Three, Four, and Five. 


For the reasons
stated above, we affirm the trial court=s
judgment.

 

July
15, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Appellant was charged in cause numbers F-0140604-HP and F-0127442-KP of the
felony offense of aggravated sexual assault of a child under the age of
fourteen.  In cause numbers F-0140598-HP,
F-0140605-HP, F-0140608-HP, F-0140618-HP, F-0140619-HP, and 

F-0140620-HP, Appellant was charged with possession or
promotion of child pornography depicting a child younger than eighteen,
engaging in deviate sexual intercourse. 
In cause numbers F-0140590-HP, F-0140597-HP, F-0140600-HP, F-0140610-HP,
F-0140611-HP, 

F-0140612-HP, and F-0140617-HP,
Appellant was charged with possession or promotion of child pornography
depicting a child younger than eighteen, engaging in lewd exhibition of the
genitals.  In cause number F-0140599-HP,
Appellant was charged with possession or promotion of child pornography
depicting a child younger than eighteen, engaging in the sexual conduct of
masturbation.





[2]
An individual who had met Appellant through the Yahoo Personals provided an
affidavit to the police in which he indicated that he had been in the Appellant=s home. 
While there, Appellant had shown him a videotape of teen males
performing sexual acts on one another and then on Appellant=s computer screen, he had seen another
video in which three young males, all under the age of ten years, engaged in
sexual acts.  Additionally, he provided a
handwritten map of Appellant=s
home.  Both of these items were attached
to the search warrant.





[3]
958 S.W.2d 834 (Tex.Crim.App. 1998).