Leonard Dave Rachuig v. State

















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-238-CR

     LEONARD DAVE RACHUIG,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 97-212-C
                                                                                                                

O P I N I O N
                                                                                                                

      Leonard Dave Rachuig pled guilty before a jury to the offenses of intoxication assault and
felony driving while intoxicated. See Tex. Pen. Code Ann. § 49.07(a) (Vernon 1994), §
49.09(b) (Vernon Supp. 1998). The jury assessed his punishment at eight years’ confinement on
both charges and a $10,000 fine on the intoxication assault charge. The jury also found that
Rachuig used or exhibited a deadly weapon during the commission of the intoxication assault.
      Rachuig presents four issues in which he claims: (1) the State’s deadly weapon notice does
not satisfy the due process requirements of the Texas Constitution; (2) the court’s instructions
concerning the deadly weapon issue are fatally defective; (3) his conviction must be reversed
because the court failed to comply with the requirements of either article 26.13 of the Code of
Criminal Procedure or the Fifth Amendment; and (4) the judgment must be modified to limit the
deadly weapon finding to the intoxication assault charge. We will modify the judgment and affirm
it as modified.
FACTUAL BACKGROUND
      The first count of the indictment alleges in pertinent part that on or about December 19, 1996,
Rachuig:
did then and there operate a motor vehicle in a public place while intoxicated, and did by
reason of such intoxication cause serious bodily injury to another, namely Marilyn
Doherty, by accident and mistake, to-wit: by failing to maintain a proper look-out while
operating said motor vehicle; by failing to apply the brakes in a timely fashion to said
motor vehicle that defendant was operating; and by failing to stop said vehicle that
defendant was operating at an intersection in obedience to a traffic control device.

Seven days before trial, the State filed a separate notice of its intention to seek a deadly weapon
finding in the case. A certificate of service in the notice recites that the State faxed Rachuig’s
counsel a copy of the notice ten days before trial.
      At trial, Rachuig pled guilty to the allegations after the State read the indictment. Upon
receiving his plea, the court permitted the State to make an opening statement, and the trial
commenced. At the conclusion of the evidence, the court’s charge directed the jury to find
Rachuig guilty and asked the jurors to assess Rachuig’s punishment and determine whether he used
or exhibited a deadly weapon during the commission of the intoxication assault. The jury made
the findings which are indicated above.
ARTICLE 26.13
      Rachuig’s third issue avers that the court did not substantially comply with the requirements
of either article 26.13 of the Code of Criminal Procedure or the Fifth Amendment because the
court failed to advise him of the range of punishment prior to accepting his guilty plea. See Tex.
Code Crim. Proc. Ann. art. 26.13(a)(1) (Vernon 1989). Rachuig also contends that the court
erred by failing to ask him any questions to ascertain whether his plea was free and voluntary. 
Id. art. 26.13(b).
Article 26.13(a)(1)
      The clerk’s record and the reporter’s record present conflicting evidence on the extent of the
court’s admonishment. The clerk’s record contains an “Arraignment Order” which is dated the
first day of trial and provides in pertinent part that Rachuig “was duly admonished by the Court
of the consequences of [his] plea of guilty.” The court informed the jury in the charge that
Rachuig had “persisted in entering his pleas of guilty, notwithstanding that the court, as required
by law, has admonished him of the consequences.” The judgment recites that Rachuig was “duly
arraigned.” 
      On the other hand, the court’s notations on the docket sheet merely reflect that Rachuig “pled
guilty.” The docket sheet is silent regarding any admonishments. The reporter’s record contains
no admonishments. Moreover, the court reporter has certified by letter that the “complete
reporter’s record” has been filed in this cause.
      Generally, “recitations in the judgment and other portions of the record are binding on an
appellant in the absence of direct proof to the contrary,” and “the appellant has the burden of
overcoming the presumptions raised by the record in such cases.” Brown v. State, 917 S.W.2d
387, 390 (Tex. App.—Fort Worth 1996, pet. ref’d); accord Breazeale v. State, 683 S.W.2d 446,
450 (Tex. Crim. App. 1985) (on rehearing); Creeks v. State, 537 S.W.2d 29, 30 (Tex. Crim.
App. 1976); see also Solis v. State, 673 S.W.2d 270, 273-74 (Tex. App.—Corpus Christi 1984),
aff’d, 718 S.W.2d 282 (Tex. Crim. App. 1986).
      We assume without deciding that the conflicts in the record overcome any presumption of a
valid admonishment raised by the recitations in the arraignment order, the charge, and the
judgment. And thus assuming that the court failed to admonish Rachuig pursuant to article
26.13(a)(1), we will review the record to determine whether Rachuig was harmed by such failure.
      At oral argument, Rachuig suggested that the total failure of the court to comply with the
requirements of article 26.13(a)(1) amounts to a structural error to which no harm analysis can be
applied. See Cain v. State, 947 S.W.2d 262, 264 n.5 (Tex. Crim. App. 1997) (“certain federal
constitutional errors labeled as ‘structural’ are not subject to a harmless error analysis”); see also
Arizona v. Fulminante, 499 U.S. 279, 306-12, 111 S. Ct. 1246, 1263-66, 113 L. Ed. 2d 302
(1991); Ex parte Fierro, 934 S.W.2d 370, 372-73 (Tex. Crim. App. 1996), cert. denied, ___ U.S.
___, 117 S. Ct. 2517, 138 L. Ed. 2d 1019 (1997). “An error is ‘structural’ only if it is the kind
of error that affects the framework in which the trial takes place and defies analysis by harmless
error standards.” Id. at 372.
      The Court of Criminal Appeals has specifically rejected Rachuig’s position that a total failure
to admonish pursuant to article 26.13(a)(1) constitutes “structural error.” High v. State, 964
S.W.2d 637, 638 (Tex. Crim. App. 1998) (per curiam); see also Cain, 947 S.W.2d at 264. In
High, the First Court of Appeals had reversed the judgment without conducting a harm analysis
after concluding the court did not admonish the defendant concerning the applicable range of
punishment. High, 964 S.W.2d at 638. The Court of Criminal Appeals reversed for the lower
court to conduct a harm analysis under Rule 44.2 of the appellate rules. The Court reaffirmed its
statement in Cain that the “absence of substantial compliance” with the requirements of article
26.13 is not an error which is immune from a harm analysis. Id.; see also Cain, 947 S.W.2d at
264. Accordingly, we will conduct a harm analysis to determine whether Rachuig was harmed
by the court’s failure to comply with article 26.13(a)(1).
Tex. R. App. P. 44.2
      Rachuig contends in his brief that the court’s failure to comply with article 26.13(a)(1) is a
constitutional error subject to Rule 44.2(a). Although the State does not cite Rule 44.2(a), it
argues that the court’s failure to comply with article 26.13 did not contribute to Rachuig’s
conviction or punishment—the harmless error standard of Rule 44.2(a). See Tex. R. App. P.
44.2(a). Rule 44.2(a) provides that in cases of constitutional error, “the court of appeals must
reverse a judgment of conviction or punishment unless the court determines beyond a reasonable
doubt that the error did not contribute to the conviction or punishment.” Id. Other courts have
applied Rule 44.2(a) to article 26.13 errors. See Aguirre-Mata v. State, 962 S.W.2d 264, 266-67
(Tex. App.—Houston [1st Dist.] 1998, pet. filed); Anders v. State, No. 12-96-366-CR, slip op.
at 3-4, 1997 WL 730224, at *2-3 (Tex. App.—Tyler Nov. 19, 1997, pet. ref’d) (on rehearing).
      This Court recently considered an article 26.13 error and applied the standard of Rule 44.2(b)
to assess harm. See Raney v. State, 958 S.W.2d 867, 873 (Tex. App.—Waco 1997, pet.
granted).


 Rule 44.2(b) provides that in cases involving “other” (i.e., non-constitutional) error,
such error “must be disregarded” unless it affected the appellant’s “substantial rights.” Id. We
followed this rule for two reasons: (1) we observed without analysis that an article 26.13 error is
statutory rather than constitutional in nature; and (2) we followed a federal rule which applies a
similar harmless error standard in admonishment error cases. Id.; Fed. R. Crim. P. 11(h).



      The Court of Criminal Appeals has given no direct guidance on the question of which standard
should apply. The “constitutional error” standard finds its genesis in the 1967 decision of the
United States Supreme Court in Chapman v. California. 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed.
2d 705 (1967). In Chapman, the Court held “that before a federal constitutional error can be held
harmless, the court must be able to declare a belief that it was harmless beyond a reasonable
doubt.” Id. 386 U.S. at 24, 87 S. Ct. at 828. The Court of Criminal Appeals recognized that
former appellate rule 81(b)(2) “was the rhetorical and semantical equivalent of the harmless error
standard” set forth in Chapman. Harris v. State, 790 S.W.2d 568, 584 (Tex. Crim. App. 1989). 
Rule 44.2(a) is identical to the former rule 81(b)(2). Thus, it represents the continuation of the
Chapman standard under the new appellate rules. See Brown v. State, 960 S.W.2d 265, 271 (Tex.
App.—Corpus Christi 1997, no pet.); Fowler v. State, 958 S.W.2d 853, 864 (Tex. App.—Waco
1997, pet. granted).
      Rachuig suggests that because the purpose of article 26.13 is to ensure the voluntariness of
a defendant’s plea, a court’s failure to follow its requirements is “constitutional error.” He cites
Boykin v. Alabama, in which the Supreme Court reversed a capital robbery conviction where the
trial court accepted Boykin’s guilty plea “without an affirmative showing that it was intelligent
and voluntary.” 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969). The Court
grounded this decision on the fact that a guilty plea generally constitutes a waiver of three
constitutional rights: (1) the Fifth Amendment privilege against self-incrimination; (2) the Sixth
Amendment right to a jury trial; and (3) the Sixth Amendment right to confront one’s accusers. 
Id., 395 U.S. at 243, 89 S. Ct. at 1712. The Court held, “We cannot presume a waiver of these
three important federal rights from a silent record.” Id.
      Earlier in the same term, the Court considered a federal defendant’s claim that his plea was
obtained without full compliance with Rule 11 of the Federal Rules of Criminal Procedure. 
McCarthy v. United States, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969). McCarthy
argued that the trial court had failed to comply with Rule 11 because: (1) it accepted his plea
“without first addressing [him] . . . personally and determining that the plea [was] . . . made
voluntarily with understanding of the nature of the charge”; and (2) it entered judgment without
ascertaining whether “there [was] . . . a factual basis for the plea.” Id., 394 U.S. at 462, 89 S.
Ct. at 1169. The Court observed that McCarthy’s guilty plea waived the three constitutional rights
identified above. The Court held that an accused’s guilty plea “must be ‘an intentional
relinquishment or abandonment of a known right or privilege’” before it meets the requirements
of federal due process. Id., 394 U.S. at 466, 89 S. Ct. at 1171 (quoting Johnson v. Zerbst, 304
U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)). The Court concluded that any
failure to comply with Rule 11 requires automatic reversal because “noncompliance deprives the
defendant of the Rule’s procedural safeguards that are designed to facilitate a more accurate
determination of the voluntariness of his plea.” Id., 394 U.S. at 471-72, 89 S. Ct. at 1173-74.
      Fourteen years later, the Supreme Court adopted Rule 11(h) in response to its own decision
in McCarthy. See Fed. R. Crim. P. 11 advisory committee’s note at 362 (West 1986) (observing
that the circumstances justifying the McCarthy decision no longer exist); Raney, 958 S.W.2d at
873 n.4. The Supreme Court has not addressed the application of Rule 11(h). In Raney however,
we adopted a standard frequently employed by the federal courts of appeals for assessing whether
an accused has been harmed by an admonishment error. There we stated,
[W]hen we assess harm under Rule 44.2(b) flowing from a failure to comply with article
26.13, we review the entire record to determine “whether the defendant’s knowledge and
comprehension of the full and correct information would have been likely to affect his
willingness to plead guilty.”
 
Although we review the entire record, “we shall consider only such information
contained therein as is temporally relevant to the voluntary and uncoerced nature of the
defendant’s guilty plea, and to his knowledge and understanding of the nature of the
charges and the consequences of his plea.”

Id. at 874 & n.6 (quoting United States v. Johnson, 1 F.3d 296, 298, 302 (5th Cir. 1993)).
      The purpose of the admonishments set forth in article 26.13 “is to insure that the defendant
entered his plea with full knowledge of its consequences. An affirmative showing of such
knowledge is constitutionally required as well.” Whitten v. State, 587 S.W.2d 156, 158 (Tex.
Crim. App. [Panel Op.] 1979) (on rehearing) (citing Boykin); accord Price v. State, 866 S.W.2d
606, 615 (Tex. Crim. App. 1993) (Baird, J., dissenting); see also Elliott v. State, 874 S.W.2d
238, 239 (Tex. App.—El Paso 1994, no pet.). As the Supreme Court noted in McCarthy, “The
nature of the inquiry required by [the admonishment statute] must necessarily vary from case to
case, and, therefore, we do not establish any general guidelines other than those expressed in the
Rule itself.” “In all such inquiries, ‘[m]atters of reality, and not mere ritual, should be
controlling.’” McCarthy, 394 U.S. at 467 n.20, 89 S. Ct. at 1171-72 n.20 (quoting Kennedy v.
United States, 397 F.2d 16, 17 (6th Cir. 1968)).
      We contrast this statement with the strict guidelines set forth by the Court in Miranda v.
Arizona. 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In Miranda, the Court
established a per se test for the admissibility of custodial statements. Id., 384 U.S. at 444-45, 86
S. Ct. at 1612. The Texas legislature codified this per se test in article 38.22 of the Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979). A failure
to comply with the requirements of article 38.22, section 2 is thus a constitutional error for which
a harm analysis would be conducted pursuant to Rule 44.2(a). See Brown, 960 S.W.2d at 271.
      The Supreme Court rejected the Chapman constitutional error standard for admonishment
error when it adopted Rule 11(h). Unlike article 38.22, article 26.13 does not establish a stringent
test for establishing the knowing and voluntary nature of a defendant’s guilty plea. Rather, it
establishes “general guidelines.” McCarthy, 394 U.S. at 467 n.20, 89 S. Ct. at 1171 n.20. For
these reasons, we continue to believe as we stated in Raney that the Rule 44.2(b) test is appropriate
for assessing harm in cases involving article 26.13 error. See Raney, 958 S.W.2d at 873; contra
Aguirre-Mata, 962 S.W.2d at 266-67; Anders, slip op. at 3-4, 1997 WL 730224, at *2-3.
      Rachuig’s specific complaint is that the court failed to personally admonish him regarding the
range of punishment for the offenses for which he was on trial. Boykin and the Fifth Amendment
require an affirmative showing in the record “that the defendant entered his plea with full
knowledge of [the range of punishment].” Whitten, 587 S.W.2d at 158. In this case, the court
informed the venire panel of the appropriate range of punishment. Counsel for the prosecution
and the defense both questioned the venire members at length about their ability to consider the
entire range of punishment when assessing the sentence in Rachuig’s case. 
      The judgment recites that on the day of trial Rachuig personally appeared and announced
ready “and thereupon a jury . . . was duly selected, impaneled and sworn, who . . . heard the
indictment read and the defendant’s plea thereto.” The reporter’s record reflects that the court
introduced Rachuig to the jury panel at the beginning of voir dire and later (after having informed
the panel of the applicable punishment range) asked whether any member of the panel knew
Rachuig. During voir dire, Rachuig’s counsel asked whether any of the potential jurors knew
Rachuig, and at the conclusion of voir dire a hearing was held outside the presence of the jury in
which Rachuig testified that he fully understood the State’s plea bargain offer but did not want to
accept it.
      These recitations create a strong presumption that Rachuig was present in the courtroom
during the entire voir dire process. See Brown, 917 S.W.2d at 390; see also Tex. Code Crim.
Proc. Ann. art. 33.03 (Vernon 1989) (requiring presence of defendant at trial). Thus, the record
of the voir dire examination affirmatively shows that Rachuig had “full knowledge” of the
applicable punishment range prior to the entry of his plea. Accordingly, we conclude that he was
not harmed by the court’s failure to personally admonish him of the range of punishment. See
Anders, slip op. at 4, 1997 WL 730224, at *3.
      Although we find the error harmless in this case, we take this opportunity to strongly
encourage trial courts to admonish defendants under article 26.13(a) whether they are pleading
guilty before the court or before a jury. When this is done, it “not only facilitates [the court’s]
own determination of a guilty plea’s voluntariness, but [it] also facilitates that determination in any
subsequent post-conviction proceeding based upon a claim that the plea was involuntary.” 
McCarthy, 394 U.S. at 467, 89 S. Ct. at 1171.
Article 26.13(b)
      Rachuig also argues that the court erred by failing to ask him any questions to ascertain
whether his plea was free and voluntary. We initially observe that article 26.13 does not require
the court to ask a defendant anything. Rather, it imposes an obligation on the court to advise a
defendant of the consequences of a guilty plea before accepting such a plea. Tex. Code Crim.
Proc. Ann. art. 26.13(a). Article 26.13(b) does provide that a court cannot accept a defendant’s
guilty plea “unless it appears that the defendant is mentally competent and the plea is free and
voluntary.” Id. art. 26.13(b).
      From the record we see that Rachuig sent a letter to the court nineteen days before trial
expressing frustration with his attorney. Rachuig wanted to plead guilty to the charges and
instructed his attorney to negotiate an agreement with the prosecutor. According to the letter
however, it appears the State was not willing to extend a plea offer and was insisting on a jury
trial. See Tex. Code Crim. Proc. Ann. art. 1.13(a) (Vernon Supp. 1998) (defendant cannot
waive a jury trial without the State’s consent). During voir dire, Rachuig’s counsel informed the
venire members that his client would plead guilty. The court’s arraignment order recites:
it plainly appearing to the Court, and the Court having found, that the said defendant is
sane, and that he is not influenced by any consideration of fear or by any persuasion or
by any delusive hope of pardon prompting said defendant to confess guilt;
 
Now therefore, the said plea of guilty of the said defendant is received by the Court.

In the charge, the court informed the jury, “It plainly appearing to the court that the defendant is
mentally competent, and that he is not influenced to make said pleas by any consideration of fear,
persuasion, or any delusive hope of pardon prompting him to confess his guilt, his pleas are by
the court received.” The court’s judgment states that it appeared to the court that Rachuig “was
mentally competent” at the time of his plea.
      These excerpts from the record raise a strong presumption that the court believed Rachuig was
mentally competent and was acting freely and voluntarily when he entered his guilty plea. Brown,
917 S.W.2d at 390. We do not deem the court’s failure to directly ask Rachuig any questions
sufficient to rebut the presumption raised by the record. Id. Accordingly, we conclude that the
court adequately satisfied itself that Rachuig was mentally competent and that his plea was free and
voluntary. See Tex. Code Crim. Proc. Ann. art. 26.13(b).
      For these reasons, we overrule Rachuig’s third issue.
THE DEADLY WEAPON FINDING
      Rachuig’s first issue challenges the adequacy of the State’s notice that it intended to seek a
deadly weapon finding. His second issue avers that the court’s charge on the deadly weapon issue
is erroneous. His fourth point contends the court’s judgment improperly attaches the jury’s deadly
weapon finding to both the intoxication assault and the felony DWI convictions.
Notice
      The State may give notice of its intent to seek a deadly weapon finding in one of two ways:
(1) by pleading the use or exhibition of a deadly weapon in the indictment; or (2) by filing a
separate pleading giving notice of such intent. Ex parte Patterson, 740 S.W.2d 766, 776 (Tex.
Crim. App. 1987); Perry v. State, 744 S.W.2d 632, 633 (Tex. App.—Houston [1st Dist.] 1987,
no pet.). “[A]ny allegation which avers a death [or serious bodily injury] was caused by a named
weapon or instrument necessarily includes an allegation that the named weapon or instrument was,
‘in the manner of its use . . . capable of causing’ (since it did cause) death [or serious bodily
injury].” Ex parte Beck, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989); accord Ex parte
McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992).
      The first count of the indictment alleges in pertinent part that Rachuig:
by reason of [his] intoxication cause[d] serious bodily injury to another, namely Marilyn
Doherty, by accident and mistake, to-wit: by failing to maintain a proper look-out while
operating said motor vehicle; by failing to apply the brakes in a timely fashion to said
motor vehicle that defendant was operating; and by failing to stop said vehicle that
defendant was operating at an intersection in obedience to a traffic control device.

This allegation provided Rachuig with adequate notice of the State’s intent to seek a deadly
weapon finding. See Mitchell v. State, 821 S.W.2d 420, 424 (Tex. App.—Austin 1991, pet.
ref’d). Thus, we need not address the adequacy of the separate notice filed by the State. 
Accordingly, we overrule Rachuig’s first issue.
The Jury Charge
      In a jury trial, the State can obtain a deadly weapon finding in one of three manners: (1) if the
indictment specifically alleges the accused used or exhibited a deadly weapon and the jury finds
the defendant guilty as charged; (2) if the indictment alleges the use or exhibition of a deadly
weapon by design and the jury finds the accused guilty as charged; or (3) if the jury provides an
affirmative response to a special issue concerning the defendant’s use or exhibition of a deadly
weapon. Davis v. State, 897 S.W.2d 791, 793 (Tex. Crim. App. 1995); Polk v. State, 693
S.W.2d 391, 396 (Tex. Crim. App. 1985).
      In this case, the indictment does not specifically allege that Rachuig used a “deadly weapon,”
nor does its allegation that he caused serious bodily injury by the manner in which he drove his
motor vehicle allege the use or exhibition of a deadly weapon by design. See Thomas v. State, 821
S.W.2d 616, 620 (Tex. Crim. App. 1991). Thus, the State had to obtain a separate jury finding
on the issue. Hill v. State, 913 S.W.2d 581, 584 (Tex. Crim. App. 1996).
      The court’s charge provided the jury with a generic definition of a “deadly weapon.” It then
directed the jurors to return an affirmative finding, if they found beyond a reasonable doubt that
Rachuig had used or exhibited a deadly weapon in the commission of the intoxication assault
offense. Rachuig did not object to the court’s charge. The jurors returned an affirmative finding
on the deadly weapon issue.
      Because Rachuig did not object to the charge, we must determine whether the court’s
instructions regarding the deadly weapon issue caused him “egregious harm.” Id. at 585; Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (on rehearing). Rachuig argues that the
generic instruction harmed him because it failed to limit the jury’s consideration to Rachuig’s
vehicle as the only object for which they could return an affirmative finding. He contends the
State should have been limited in this manner because it specifically alleged that it intended to
obtain a deadly weapon finding on the basis of the manner in which he used or exhibited his
automobile during the commission of the offense. He suggests that because the jury’s
consideration was not thus limited, the jury might have returned its deadly weapon finding on the
basis of the alcohol he had consumed prior to the collision in which Mrs. Doherty was injured.



      We assume without deciding that the charge should have limited the jury’s consideration to
Rachuig’s vehicle on the deadly weapon issue.
      Because Rachuig did not object to the charge as submitted however, he must demonstrate
"egregious harm" before we will delete the deadly weapon finding.


 See Patterson, 740 S.W.2d
at 776-78. That is, he must show that the error was “so egregious and created such harm that [he]
‘has not had a fair and impartial trial.’” Kucha v. State, 686 S.W.2d 154, 155 (Tex. Crim. App.
1985) (quoting Almanza, 686 S.W.2d at 171). “[T]he actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the contested issues and weight
of probative evidence, the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.” Almanza, 686 S.W.2d at 171.
      At Rachuig’s trial, one of the officers who responded to the scene of the collision testified that
in his opinion Rachuig’s car was a deadly weapon in the manner in which he had operated it and
that Rachuig’s use of his automobile resulted in serious bodily injury to Mrs. Doherty. In
argument, one of the prosecutors urged the jury to find that Rachuig’s car was a deadly weapon
based on the injuries sustained by Mrs. Doherty. No further reference to the deadly weapon issue
was made.
      From our review of the record, we conclude that Rachuig did not suffer such harm as to deny
him a fair and impartial trial on the deadly weapon issue, even if the court’s charge was erroneous. 
See White v. State, 844 S.W.2d 929, 932-33 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d). 
Accordingly, we overrule his second issue.
The General Deadly Weapon Finding
      The indictment gave Rachuig notice only that the State would seek a deadly weapon finding
in connection with the intoxication assault charge. The State’s separate deadly weapon notice
informed him that a deadly weapon finding would be sought on that charge. The deadly weapon
question asked the jury to determine whether Rachuig used or exhibited a deadly weapon during
the commission of the intoxication assault. In addition to the written charge, the court orally
informed the jury, “You have the verdict forms as to [intoxication assault], then you will have a
special issue as to whether or not a deadly weapon was used as to [intoxication assault]. Then you
will have the verdict form attached to [felony DWI].” The judgment reflects that the jury found
Rachuig guilty of intoxication assault and felony DWI. It then recites that the “jury found that a
deadly weapon was used in the commission of the offense.” The judgment does not limit the
finding to the intoxication assault conviction.
      The State concedes that the judgment is erroneous to the extent that it reflects the jury
returned a deadly weapon finding in connection with the DWI charge. The State argues however
that such error is harmless because assuming Rachuig does become eligible for parole on an earlier
date on the DWI conviction (without the deadly weapon finding) than on the intoxication assault
conviction, he will nevertheless not be released from prison until he is paroled on the latter
offense.
      We do not presume to know the effect this improper finding might have on Rachuig’s parole
eligibility under the guidelines established by the Board of Pardons and Paroles. See Tex. Gov’t
Code Ann. § 508.144 (Vernon Supp. 1998). Moreover, article 37.12 requires the court to enter
“the proper judgment.” Tex. Code Crim. Proc. Ann. art. 37.12 (Vernon 1981). Such a
judgment must accurately recite any deadly weapon findings. Id. art. 42.01, § 1(21), art. 42.12,
§ 3g(a)(2) (Vernon Supp. 1998); cf. Asberry v. State, 813 S.W.2d 526, 529-31 (Tex.
App.—Dallas 1991, pet. ref’d) (appellate court modified judgment to reflect jury’s deadly weapon
finding which trial court had improperly failed to include in judgment). For these reasons we
sustain Rachuig’s fourth issue. Accordingly, we modify the judgment to reflect that the “jury
found that a deadly weapon was used in the commission of the intoxication assault offense.”
      We affirm the judgment as modified.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice


Before Chief Justice Davis
            Justice Cummings and
            Justice Vance
Affirmed as modified
Opinion delivered and filed July 15, 1998
Publish