Michael Wayne JORDAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–172–CR.

Court of Appeals of Texas, Waco.

July 7, 1999.

Rehearing Overruled Sept. 8, 1999.

Brett Bigham, Waxahachie, for appellant.

Joe F. Grubbs, Dist. Atty., Waxahachie, for appellee.

Before Chief Justice DAVIS Justice CUMMINGS and Justice VANCE.

## O P I N I O N

REX D. DAVIS, Chief Justice.

A jury convicted Appellant Michael Wayne Jordan of burglarizing a habitation while attempting to commit or committing aggravated assault. *See* TEX. PEN.CODE ANN. § 30.02(a)(3) (Vernon 1994). The jury found that Jordan had been previously convicted of a felony offense and sentenced him to thirty years' imprisonment. Jordan presents three issues in which he challenges the court's: (1) failure to submit a charge on the underlying aggravated assault (or misdemeanor assault) as a lesser included offense; (2) submission of a deadly weapon issue to the jury; and (3) failure to exclude an interpreter from the courtroom during the testimony of other witnesses.

## FACTUAL BACKGROUND

The indictment alleges Jordan entered the habitation of Julian Martinez without effective consent "and therein attempted to commit and committed Aggravated Assault." According to Jordan, he went to the residence inhabited by Martinez and Francisco Cerda sometime after midnight on the date in question to inquire whether Cerda knew anything about some speakers which had been stolen from Jordan's car.[1] No one answered at Cerda's door, so Jordan walked up the stairs leading to Martinez's apartment and knocked on his door. Martinez came to the door in reply, and Jordan tried to ask him about the speakers. Because Martinez does not speak English, they had difficulty communicating, and Martinez "got irate" with Jordan. Martinez pulled the door open and tried to hit Jordan with a metal object which Jordan thought was a wrench. They began struggling, and during the course of the fight, Martinez grabbed Jordan by the shirt and pulled him into the apartment. The fight continued into Martinez's kitchen and bedroom. Jordan testified that he hit Martinez several times in self-defense but did not intend to commit any felony or assault Martinez that evening.

Martinez's version of the events that evening varied significantly from Jordan's. According to Martinez, he was packing his clothes for a trip to Laredo he intended to make the next day, when he heard someone ascending the stairs. His door "opened violently," and someone attacked him. Martinez was attacked so suddenly that he could not see who was attacking him. His assailant hit him over the head several times with an electric heater and another object which he could not identify. Martinez called out to Cerda for help.

Cerda heard his call for help. He was unsure of how many were involved in the altercation upstairs so he got a handgun. He went upstairs and called Martinez's name. A man whom he later identified as Jordan emerged holding a two-by-four. Jordan brandished the two-by-four as if he were going to attack Cerda. Cerda told him to put it down and come downstairs.

1. Jordan explained that Cerda was known to purchase goods off the street.

Jordan descended the stairs as Cerda held the gun on him. Cerda allowed Jordan to leave in his car. He then located a police car in the area and had the officers come to his location.

## LESSER INCLUDED OFFENSE

Jordan contends in his first issue that the court erred in "failing to charge the jury on the lesser included offenses of aggravated assault and/or assault." Specifically, he argues that his testimony that Martinez grabbed him and pulled him into the apartment constitutes some evidence that he did not "break into" the residence "but in fact came in only after being attacked by [Martinez]." His brief does not refer us to any particular evidence in the record which would suggest Martinez suffered less than serious bodily injury. Nevertheless, we shall review the record for such evidence as this issue is at least a "subsidiary question that is fairly included" in Jordan's brief. TEX.R.APP. P. 38.1(e).

■ A trial court must submit a lesser included offense to the jury if: (1) such offense is "included within the proof necessary to establish the offense charged"; and (2) "there [is] some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense." *Arevalo v. State*, 970 S.W.2d 547, 548 (Tex.Crim.App. 1998) (quoting *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App.1981)). The second element of *Royster* is satisfied only when "the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense, and not the greater offense." *Id.* (quoting *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993)).

We focus on only the second element because the State does not contest that aggravated assault and assault are within the proof necessary to prove the burglary alleged in Jordan's case. *See Farley v. State*, 970 S.W.2d 755, 757 & n. 3 (Tex. App.—Fort Worth 1998, no pet.) (sexual assault is lesser included offense of burgla-

ry by attempting to commit or committing sexual assault); *McElhaney v. State*, 899 S.W.2d 15, 17 (Tex.App.—Tyler 1995, pet. ref'd, untimely filed) (assault is lesser included offense of aggravated assault). We will examine each potential lesser included offense separately.

### AGGRAVATED ASSAULT

■ The indictment alleges that Jordan entered Martinez's habitation without his effective consent. Jordan's primary argument for submission of both lesser included offenses is his testimony that Martinez forced him into the residence. Thus, he argues that he entered at Martinez's insistence and not without his consent. Additionally, the State failed to produce any photographs of the doorway which Jordan allegedly broke when he "violently" opened the door. This failure is noteworthy because the State offered multiple photographs from the scene of the crime.

Based on this evidence, a rational jury could have found that Jordan was not guilty of the greater offense for either of two reasons: (1) he did not voluntarily enter Martinez's residence as required by section 6.01(a) of the Penal Code; *See Brown v. State*, 955 S.W.2d 276, 279–80 (Tex.Crim.App.1997); TEX. PEN.CODE ANN. § 6.01(a) (Vernon 1994); or (2) he did not enter the residence without Martinez's effective consent. Thus, the court erred by not charging the jury on the lesser included offense of aggravated assault. Accordingly, we must determine whether Jordan was harmed by the court's failure to submit this lesser included offense to the jury.

■ Jordan filed a written request for the court to charge the jury on the lesser included offense of aggravated assault, which the court denied. He also objected to the court's failure to include this lesser included offense in the charge. Thus, the court's error in failing to submit the lesser offense to the jury will require reversal if Jordan has suffered "*any* harm" thereby. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.

Crim.App.1996). To determine whether he suffered harm, we consider: "(1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) arguments of counsel; and, (4) any other relevant information revealed by the record of the trial as a whole." *Id.*

The court did include Jordan's requested self-defense instruction in the charge. However, this did not provide the jury any meaningful alternative for assessing whether he entered the residence with Martinez's consent. Stated another way, that the jury apparently rejected the self-defense argument suggests the jury found Jordan responsible beyond a reasonable doubt for causing Martinez's injuries. If so, the jurors had only two options: (1) they could find him guilty "as charged"; or (2) they could acquit him, even though they believed him to be criminally responsible for Martinez's injuries.

As we have already stated, the evidence in this case would permit a jury rationally to find that if Jordan is guilty, he is guilty only of aggravated assault, if the jury believed that Martinez forced Jordan to enter the residence. Again, because the jurors apparently believed Jordan caused Martinez's injuries, the court's charge permitted them only to convict or acquit of the greater offense, even if they believed he was forced into the residence. Jordan's counsel argued that Martinez forced his client to enter the residence. He reminded the jury of the State's failure to present photographic evidence depicting the doorframe which had allegedly been broken when Jordan "violently" forced his way into the residence.

For these reasons, we conclude that Jordan suffered "some" harm as a result of the court's failure to charge the jury on the lesser included offense of aggravated assault. *See Porter v. State*, 921 S.W.2d 553, 558–59 (Tex.App.—Waco 1996, no pet.).

## ASSAULT

■ With regard to Jordan's requested charge on the lesser included offense of assault, we must determine whether the record contains some evidence that if Jordan caused injury to Martinez, he caused only bodily injury. *See Arevalo*, 970 S.W.2d at 548. According to Officer Springer, Martinez was "awake and conscious" when he arrived at the scene and attempted to communicate with the officer in Spanish. Cerda testified similarly that Martinez was "washing his face when the police and [he] arrived" and asked Cerda "to take off his shirt because he was full of blood."

Martinez's treating physician stated on cross-examination that Martinez did not require any blood transfusions, have any broken bones, or suffer a concussion. The doctor explained that Martinez suffered lacerations and bruising and that one of the lacerations on his head required staples. Although the doctor described the injuries as "severe," he never testified that they created "a substantial risk of death," "serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN.CODE ANN. § 1.07(a)(46) (Vernon 1994) (defining "serious bodily injury").

From this evidence, we conclude that the jury rationally could have found that if Jordan is guilty, he is guilty only of assault. *See Arevalo*, 970 S.W.2d at 548. Thus, the court erred in failing to submit this lesser included offense to the jury. Having found error, we must determine whether Jordan was harmed by the court's failure to charge the jury on the lesser included offense of assault.

■ As with aggravated assault, Jordan filed a written request for the court to charge the jury on the lesser included offense of assault, which the court denied. He also objected to the court's failure to include this lesser included offense in the charge. Thus, the court's error in failing to submit the lesser offense to the jury will

require reversal if Jordan has suffered "*any* harm" thereby. *Hutch,* 922 S.W.2d at 171.

Had the jury been given the option and concluded that Jordan did not voluntarily enter Martinez's residence or that he entered with Martinez's consent, the evidence of the extent of Martinez's injuries would permit a jury rationally to find that Martinez sustained only bodily injury and that Jordan is thus guilty only of assault. During argument, Jordan's counsel challenged the State's assertion that Martinez suffered "serious" bodily injury.

For these reasons, we conclude that Jordan suffered "some" harm as a result of the court's failure to charge the jury on the lesser included offense of assault. *See Porter,* 921 S.W.2d at 558–59.

### SUMMARY

Because Jordan was harmed by the court's failure to submit both requested lesser included offenses, we sustain Jordan's first issue. Having found error requiring reversal, we will remand this cause for a new trial. However, we must address additional issues presented by Jordan which are likely to arise again during the new trial. *See Cook v. State,* 940 S.W.2d 623, 627–28 (Tex.Crim.App.1996) (addressing admissibility of evidence in the event of a retrial).

### DEADLY WEAPON FINDING

■ Jordan argues in his second issue that the court erred in submitting a deadly weapon issue to the jury because the State failed to give him notice of its intent to seek a finding on that issue. Due course of law requires the State to give such notice. *See Ex parte Patterson,* 740 S.W.2d 766, 776 (Tex.Crim.App.1987); TEX. CONST. art. I, § 19.

■ The State contends that Jordan waived his right to receive notice by failing to file a motion to quash the indictment for lack of specificity regarding the underlying aggravated assault. We disagree. "[A]n indictment charging one offense during the commission of another crime need not allege the elements of the [underlying] offense." *Tompkins v. State,* 774 S.W.2d 195, 206 (Tex.Crim.App.1987), *aff'd by an equally divided court,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989) (per curiam). Thus, any motion to quash proffered by Jordan would properly be denied by the trial court. Accordingly, we conclude Jordan did not waive his right to receive notice of the State's intent to seek a deadly weapon finding by not filing a motion to quash.

■ The State next responds that the allegation of the indictment that Jordan attempted to commit or committed aggravated assault gave him "notice that the State *could* prove the use or exhibition of a deadly weapon and *would* seek an affirmative finding of such." (emphasis added). The Corpus Christi Court of Appeals considered an identical argument in *Sanders v. State,* 963 S.W.2d 184 (Tex.App.—Corpus Christi 1998, pet. ref'd). In *Sanders,* the court construed the notice requirement of *Patterson* to mandate "some form of *express* written notice such that appellant would know that a 'deadly weapon would be a fact issue at the time of prosecution.' " *Id.* at 189 (quoting *Ex parte Beck,* 769 S.W.2d 525, 526 (Tex.Crim.App.1989)). The court thus rejected the State's "implied notice" argument. *Id.* We find that court's reasoning persuasive.

■ "The State may give notice of its intent to seek a deadly weapon finding in one of two ways: (1) by pleading the use or exhibition of a deadly weapon in the indictment; or (2) by filing a separate pleading giving notice of such intent." *Rachuig v. State,* 972 S.W.2d 170, 177 (Tex. App.—Waco 1998, pet. ref'd). The State did neither in Jordan's case. Thus, the court erred in submitting the deadly weapon issue to the jury. Accordingly, we sustain Jordan's second issue.

## PRESENCE OF INTERPRETER

■ Jordan avers in his third issue that the court erred by not excluding the interpreter from the courtroom after he invoked "the Rule." *See* TEX.R.CRIM. EVID. 613.[2] Rule 613 requires the court on request or on its own motion to exclude witnesses from the courtroom "so that they cannot hear the testimony of other witnesses." *Id.* The Rule does not apply to a witness "whose presence is shown by a party to be essential to the presentation of his cause." *Id.*

■ Article 38.30(a) of the Code of Criminal Procedure provides in pertinent part that interpreters are governed by "the same rules and penalties as are provided for witnesses." TEX.CODE CRIM. PROC. ANN. art. 38.30(a) (Vernon Supp. 1999). Thus, the Rule applies to interpreters in the same manner as it applies to witnesses.

Jordan objected to the court's failure to exclude the interpreter from the courtroom when he invoked the Rule. He did not object to the interpreter's later testimony before the jury (*i.e.*, her interpretation of Martinez's and Cerda's testimony). Thus, we must decide whether the court abused its discretion in exempting the interpreter from the Rule. *See Moore v. State*, 882 S.W.2d 844, 848 (Tex.Crim.App. 1994); *White v. State*, 958 S.W.2d 460, 463 (Tex.App.—Waco 1997, no pet.).

The record does not clearly reflect which witnesses the interpreter heard testify other than Martinez and Cerda, whose testimony she interpreted. Nevertheless, the State concedes in its brief that she "heard the testimony of Lt. Jeff Springer, Sgt. Ron Turbeville, and Officer Don Settlemyer" before she interpreted Martinez's and Cerda's testimony. At trial, the State did not argue that the interpreter should be exempted from the Rule. The court did not independently articulate any basis for exempting her from the Rule. Accordingly, we conclude the court abused its discretion in failing to exclude the interpreter from the courtroom during the officers' testimony.[3] *Moore*, 882 S.W.2d at 848; *White*, 958 S.W.2d at 463.

When we find that the court abused its discretion in this manner, we usually conduct a harm analysis to determine whether this non-constitutional error requires reversal. *See White*, 958 S.W.2d at 465; TEX.R.APP. P. 44.2(b). However, we have already determined that Jordan's case must be remanded for a new trial because of the court's failure to charge the jury on the requested lesser included offenses. Thus, we need not decide whether Jordan was harmed by the court's failure to exclude the interpreter from the courtroom. Accordingly, we sustain Jordan's third issue in part.

## CONCLUSION

We have determined that the court's error in failing to charge the jury on the lesser included offenses of aggravated assault and assault requires reversal of this cause. Accordingly, we reverse the judgment and remand this cause for a new trial.

CUMMINGS, J., not participating.

---

**2.** We cite the rules of evidence in effect at the time of Jordan's trial.

**3.** The interpreter's presence in the courtroom was "essential to the presentation of [the State's] cause" during Martinez's and Cerda's testimony. TEX.R.CRIM. EVID. 613.