IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00036-CV

 

In the
Interest of D.L.F. and A.L.F., Children

 

 

 



From the County Court at Law

Hill County, Texas

Trial Court No. 45019

 



MEMORANDUM  Opinion










 

            L.F. appeals the judgment of the trial
court which terminates his parental rights to his children, D.L.F. and A.L.F. 
Because the evidence is legally and factually sufficient to support the trial
court’s judgment, we affirm.

            The petition of the Texas Department
of Family and Protective Services alleged that L.F. committed several predicate
acts for termination under Texas Family Code section 161.001(1), and that
termination was in the best interest of the children.  See Tex. Fam. Code Ann. §
161.001(1)(D),(E), & (O); § 161.001(2) (Vernon Supp. 2007).  In one issue
separated into 4 sub-parts, L.F. argues that the evidence supporting each of
those grounds of termination and the best interest finding was legally and
factually insufficient.  The attorney ad litem for D.L.F. and A.L.F. did not
file a brief.

 

Legal and Factual
Sufficiency Review

            In conducting a legal sufficiency
review in a parental termination case: 

[A] court should look at all the evidence in the
light most favorable to the finding to determine whether a reasonable trier of
fact could have formed a firm belief or conviction that its finding was true. 
To give appropriate deference to the factfinder's conclusion and the role of a
court conducting a legal sufficiency review, looking at the evidence in the
light most favorable to the judgment means that a reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so.  A corollary to this requirement is that a
court should disregard all evidence that a reasonable factfinder could have
disbelieved or found to be incredible.  This does not mean that a court must
disregard all evidence that does not support the finding. Disregarding
undisputed facts that do not support the finding could skew the analysis of
whether there is clear and convincing evidence.  

 

In re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting In re
J.F.C., 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in J.P.B.).

            In a factual sufficiency review,

[A] court of appeals must give due consideration
to evidence that the factfinder could reasonably have found to be clear and
convincing. . . . [T]he inquiry must be "whether the evidence is such that
a factfinder could reasonably form a firm belief or conviction about the truth
of the State's allegations."  A court of appeals should consider whether
disputed evidence is such that a reasonable factfinder could not have resolved
that disputed evidence in favor of its finding.  If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.  

 

In re J.F.C., 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting In re C.H., 89 S.W.3d
17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

            Only one predicate act under section
161.001(1) is necessary to support a judgment of termination when there is also
a finding that termination is in the child's best interest.   In re A.V.,
113 S.W.3d 355, 362 (Tex. 2003).

Predicate Act

            L.F. asserts in sub-part (c) of his
sole issue that the evidence was both legally and factually insufficient to
support the finding that he failed to comply with the provisions of a court
order.  See Tex. Fam. Code Ann.
§ 161.001(1)(O) (Vernon Supp. 2007).   

Evidence

            L.F. was ordered by the trial court to
comply with the Department’s Family Service Plan.  L.F. admitted at trial that
he completed only three of five required parenting classes, failed to complete
a required psychological evaluation, and failed to complete a required alcohol
assessment.  L.F. also failed to attend required individual therapy.  Further,
he failed to obtain appropriate housing as required, although his current
employer testified that a two bedroom apartment was being remodeled for L.F.
and would be ready soon.  At the time of trial, L.F. lived in the night
watchman’s quarters, which was a one room efficiency apartment.  

            At trial, L.F. justified his failures
to do what was required on a lack of communication, lack of transportation,
surgery, and his work schedule.  On appeal, L.F. argues that he was attempting
to abide by the Family Service Plan and that he was in substantial compliance
with the Plan.  However, substantial completion or substantial compliance is
not enough to avoid a termination finding under subsection (1)(O).  In re
T.T., 228 S.W.3d 312, 319 (Tex. App.—Houston [14th Dist.] 2007, pet.
denied).

Application

            After looking at the evidence in the
light most favorable to the trial court's finding of L.F.’s failure to comply
with the provisions of a court order, we hold that a reasonable trier of fact
could have formed a firm belief or conviction that the finding was true.  The
evidence of failure to comply with the provisions of a court order was legally
sufficient.

            After giving due consideration to
evidence that the trial court could reasonably have found to be clear and
convincing, we hold that the evidence was such that the trial court could
reasonably form a firm belief or conviction that L.F. failed to comply with the
provisions of a court order.   The evidence of failure to comply with the
provisions of a court order was factually sufficient.

            Sub-part (c) of L.F.’s sole issue is
overruled.

Best Interest

            In sub-part (d) of his sole issue,
L.F. asserts that the evidence is legally and factually insufficient to support
the trial court’s finding that termination was in the best interest of the
children.  An extended number of factors have been considered by the courts in
ascertaining the best interest of the child.  Holley v. Adams, 544
S.W.2d 367, 371 (Tex. 1976).  The list is by no means exhaustive, but does
indicate a number of considerations which either have been or would appear to
be pertinent.  Id.; see In re C.H., 89 S.W.3d 17,
27 (Tex. 2003). "[S]ome of the listed factors may be inapplicable to some
cases, while other factors not listed may also be considered when
appropriate."  In re S.A.P., 169 S.W.3d 685, 707 (Tex. App.—Waco
2005, no pet.); see C.H., 89 S.W.3d at 27.

Factors

            L.F. generally argues that because he
was the sole provider for the children, A.L.F. wanted to live with him, he had
some parenting knowledge, and he was taking positive steps toward alleviating
his problems, the evidence was not sufficient to establish by clear and
convincing evidence that termination was in the best interest of the children. 
We review the evidence in light of the Holley factors.

Desires of the Children

            Both D.L.F. and A.L.F. have expressed
the desire to stay in placement.  A.L.F. has also expressed a desire to be
returned to her father, L.F.  However, at one such expression, she conditioned
the return on a safe place to live.

The Emotional and Physical Needs of/ Danger to the
Children Now and in the Future

            Both children are in therapy and
suffer from Post Traumatic Stress Disorder which A.L.F.’s psychologist
testified indicates an experience with traumatic situations.  D.L.F. is also
diagnosed with generalized anxiety disorder, described as an anxiety which inhibits
the child’s interactions and activities, and dysthymic disorder, a mood
disorder where the child experiences an ongoing sadness.  There was no
testimony as to whether the therapy sessions should continue.  

            A.L.F. expressed to others that her
father abused her and D.L.F. and that they were made to wear long sleeves to
cover the bruises.  A.L.F. also stated that they did not have enough food.  The
children’s housing situation had not been stable or healthy.  When evicted from
their housing prior to their removal, the children were left with people who
L.F. did not know very well, did not supervise the children, and drank alcohol
in the presence of the children.  By the time of trial, L.F. still did not have
a place suitable for the children to live, although a place would be ready
soon.  The children missed school.  They were behind in their education at
least by one grade level.  They were also filthy and disheveled.  They did not
know how to bathe themselves, did not know modesty, and did not know manners.

The Parental Abilities of the Individual Seeking
Custody

            Dr. Schinder, who performed a parental
assessment of L.F., stated that L.F. had minimally adequate parenting skills,
but because he would be a single parent who cannot read or write, he would have
tremendous difficulty in raising the children.

Programs Available to Assist the Individual to
Promote the Best Interest of the Children

            Parenting classes, a parenting
assessment, a psychological assessment, an alcohol assessment, and individual
therapy were provided and required for L.F.  He completed only the parenting
assessment and some of the parenting classes.

Plans for the Children by the Individual or by the
Agency Seeking Custody

            A supervisor for the Department
testified that the children are adoptable and that the Department plans to have
them adopted together.  L.F. stated that he had plans for the children.  He
stated that the children could ride the bus to and from school and he could
meet them at the edge of the property or they could walk.

Stability of the Home or Proposed Placement

            The children’s housing situation had
not been stable or healthy.  When evicted from their housing in November of
2006, the family moved around which made it difficult for the Department to
locate them.  The children were located on November 27, 2006 at a home where the occupants drank alcohol all day.  L.F. was not there at the time the
children were located.  L.F. stated at trial that he and the children would
live on the ranch were he worked, but not where he currently lived.  The place
at the ranch would be ready soon.

Acts
or Omissions of the Parent Which May Indicate that the Existing Parent-Child
Relationship is not a Proper One

 

            L.F. did not comply with the
Department’s Family Service Plan.  L.F. tested positive for cocaine once in
July during the year the children were in the Department’s custody.  According
to his caseworker, L.F. visited with the children only twice during the year. 
A drug test was required prior to each visit and L.F. would not have a drug
test done prior to the visitation appointment.  Prior to removal of the
children, L.F. left the children with people whom he did not know very well,
who did not supervise the children, and who drank alcohol in the presence of
the children.  By the time of trial, L.F. still did not have a place suitable
for the children to live.

Any Excuse for the Acts or Omissions of the Parent

            L.F. blamed his failure to comply with
the Family Service Plan on his work schedule, his hernia surgery, his
incarceration in jail for 41 days, and his search for work.  L.F. thought that
the place where he was currently living would be appropriate for the children. 
To make another bedroom, he stated that all he would have to do was add another
door.  

            The reasons L.F. gave for not visiting
his children more than twice were as follows:

            “A few times I didn’t have a ride. 
Other times, they didn’t ask me for one drug test, they asked me for four, and
then one two days before, 24 hours before seeing my girls.  There was a communication
problem there big time.  You can’t do that here, I find out, and then I find
out this.  You know, so, Well, you only did this.  You–you know, I never could
live up to their standards….”

 

            As for his positive drug test for
cocaine, L.F. denied taking cocaine and explained that the test was when he had
hernia surgery in June.  

Application

            After looking at the evidence in the
light most favorable to the trial court's finding that termination of L.F.’s
parental rights was in the best interest of the children, we hold that a
reasonable trier of fact could have formed a firm belief or conviction that the
finding was true.  The evidence that termination was in the best interest of
the children was legally sufficient.

            After giving due consideration to
evidence that the trial court could reasonably have found to be clear and
convincing, we hold that the evidence was such that the trial court could
reasonably form a firm belief or conviction that termination of L.F.’s parental
rights was in the best interest of the children.  The evidence that termination
was in the best interest of the children was factually sufficient.

            Sub-part (d) of L.F.’s sole issue is
overruled.

Conclusion

            Because we have found the evidence
sufficient to support one predicate act under section 161.001(1) and the
finding that termination is in the child's best interest, the trial court’s
judgment is affirmed.   

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed

Opinion
delivered and filed July 2, 2008

[CV06]






ourt’s
failure to charge the jury on the lesser included offense of assault. See Porter, 921 S.W.2d at 558-59.
Summary
      Because Jordan was harmed by the court’s failure to submit both requested lesser included
offenses, we sustain Jordan’s first issue. Having found error requiring reversal, we will remand
this cause for a new trial. However, we must address additional issues presented by Jordan which
are likely to arise again during the new trial. See Cook v. State, 940 S.W.2d 623, 627-28 (Tex.
Crim. App. 1996) (addressing admissibility of evidence in the event of a retrial).
 DEADLY WEAPON FINDING
      Jordan argues in his second issue that the court erred in submitting a deadly weapon issue to
the jury because the State failed to give him notice of its intent to seek a finding on that issue. Due
course of law requires the State to give such notice. See Ex parte Patterson, 740 S.W.2d 766, 776
(Tex. Crim. App. 1987); Tex. Const. art. I, § 19.
      The State contends that Jordan waived his right to receive notice by failing to file a motion
to quash the indictment for lack of specificity regarding the underlying aggravated assault. We
disagree. “[A]n indictment charging one offense during the commission of another crime need
not allege the elements of the [underlying] offense.” Tompkins v. State, 774 S.W.2d 195, 206
(Tex. Crim. App. 1987), aff’d by an equally divided court, 490 U.S. 754, 109 S. Ct. 2180, 104
L. Ed. 2d 834 (1989) (per curiam). Thus, any motion to quash proffered by Jordan would
properly be denied by the trial court. Accordingly, we conclude Jordan did not waive his right
to receive notice of the State’s intent to seek a deadly weapon finding by not filing a motion to
quash.
      The State next responds that the allegation of the indictment that Jordan attempted to commit
or committed aggravated assault gave him “notice that the State could prove the use or exhibition
of a deadly weapon and would seek an affirmative finding of such.” (emphasis added). The
Corpus Christi Court of Appeals considered an identical argument in Sanders v. State. 963
S.W.2d 184 (Tex. App.—Corpus Christi 1998, pet. ref’d). In Sanders, the court construed the
notice requirement of Patterson to mandate “some form of express written notice such that
appellant would know that a ‘deadly weapon would be a fact issue at the time of prosecution.’” 
Id. at 189 (quoting Ex parte Beck, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989)). The court thus
rejected the State’s “implied notice” argument. Id. We find that court’s reasoning persuasive.
      “The State may give notice of its intent to seek a deadly weapon finding in one of two ways:
(1) by pleading the use or exhibition of a deadly weapon in the indictment; or (2) by filing a
separate pleading giving notice of such intent.” Rachuig v. State, 972 S.W.2d 170, 177 (Tex.
App.—Waco 1998, pet. ref’d). The State did neither in Jordan’s case. Thus, the court erred in
submitting the deadly weapon issue to the jury. Accordingly, we sustain Jordan’s second issue.
PRESENCE OF INTERPRETER
      Jordan avers in his third issue that the court erred by not excluding the interpreter from the
courtroom after he invoked “the Rule.” See Tex. R. Crim. Evid. 613.


 Rule 613 requires the
court on request or on its own motion to exclude witnesses from the courtroom “so that they
cannot hear the testimony of other witnesses.” Id. The Rule does not apply to a witness “whose
presence is shown by a party to be essential to the presentation of his cause.” Id.
      Article 38.30(a) of the Code of Criminal Procedure provides in pertinent part that interpreters
are governed by “the same rules and penalties as are provided for witnesses.” Tex. Code Crim.
Proc. Ann. art. 38.30(a) (Vernon Supp. 1999). Thus, the Rule applies to interpreters in the same
manner as it applies to witnesses.
      Jordan objected to the court’s failure to exclude the interpreter from the courtroom when he
invoked the Rule. He did not object to the interpreter’s later testimony before the jury (i.e., her
interpretation of Martinez’s and Cerda’s testimony). Thus, we must decide whether the court
abused its discretion in exempting the interpreter from the Rule. See Moore v. State, 882 S.W.2d
844, 848 (Tex. Crim. App. 1994); White v. State, 958 S.W.2d 460, 463 (Tex. App.—Waco 1997,
no pet.).
      The record does not clearly reflect which witnesses the interpreter heard testify other than
Martinez and Cerda, whose testimony she interpreted. Nevertheless, the State concedes in its brief
that she “heard the testimony of Lt. Jeff Springer, Sgt. Ron Turbeville, and Officer Don
Settlemyer” before she interpreted Martinez’s and Cerda’s testimony. At trial, the State did not
argue that the interpreter should be exempted from the Rule. The court did not independently
articulate any basis for exempting her from the Rule. Accordingly, we conclude the court abused
its discretion in failing to exclude the interpreter from the courtroom during the officers’
testimony.


 Moore, 882 S.W.2d at 848; White, 958 S.W.2d at 463.
        When we find that the court abused its discretion in this manner, we usually conduct a harm
analysis to determine whether this non-constitutional error requires reversal. See White, 958
S.W.2d at 465; Tex. R. App. P. 44.2(b). However, we have already determined that Jordan’s
case must be remanded for a new trial because of the court’s failure to charge the jury on the
requested lesser included offenses. Thus, we need not decide whether Jordan was harmed by the
court’s failure to exclude the interpreter from the courtroom. Accordingly, we sustain Jordan’s
third issue in part.
CONCLUSION
      We have determined that the court’s error in failing to charge the jury on the lesser included
offenses of aggravated assault and assault requires reversal of this cause. Accordingly, we reverse
the judgment and remand this cause for a new trial.
                                                                               REX D. DAVIS
                                                                               Chief Justice
Before Chief Justice Davis
      Justice Cummings (not participating)
      and Justice Vance
Reversed and remanded
Opinion delivered and filed July 7, 1999
Publish