COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JARRETT RONARD LOCKRIDGE,    §

      Appellant,    §

v.    §

THE STATE OF TEXAS,    §

      Appellee.    §

   §

No. 08-08-00139-CR

Appeal from the

195th District Court

of Dallas County, Texas

(TC# F-0755586-N)

## **O P I N I O N**

Appellant pled guilty to aggravated assault on a public servant with a deadly weapon. The trial court found Appellant guilty and sentenced him to 18 years' confinement and assessed a $3,000 fine. The trial court overruled Appellant's motion for new trial. Appellant now appeals his conviction alleging that his guilty plea was unknowingly and involuntarily made and that he suffered ineffective assistance of counsel during the punishment phase of his plea proceedings. We affirm.

## **BACKGROUND**

At the plea proceedings, Dallas Police Officer Carter testified that on August 4, 2007, he responded to a disturbance where Appellant, his brother, and another man were involved in a street fight in front of Appellant's house. Officer Carter observed that Appellant had a brick and instructed him to drop it. Despite Officer Carter's efforts to verbally calm them, Appellant and his brother remained agitated. Officer Carter then moved the brothers to the other side of his patrol car for the purposes of investigating and resolving the situation. While Officer Carter was speaking to the brothers, Appellant's mother entered the street and began cussing at Officer Carter, which, in turn, began to agitate the brothers once more. Officer Carter directed Appellant's mother to step back

onto the sidewalk and asked her to refrain from cussing at him. Officer Carter once more turned his attention to Appellant and his brother. Their mother again entered the street cussing and "going into a road rage." Officer Carter, whose "cover" had not yet arrived, sensed that there was going to be a major disturbance. He decided to arrest Appellant's mother, and as he attempted to do so, Appellant struck Officer Carter in the head with the corner of a brick. Officer Carter suffered injuries to his head and eye. Appellant was charged by indictment with aggravated assault of a public servant with a deadly weapon.

During the plea proceedings, the trial court and Appellant engaged in the following discourse:

THE COURT: Cause Number F-07-55586 styled the State of Texas versus Jarrett Lockridge. Is that your name, sir?

THE DEFENDANT: Yes, sir.

THE COURT: You stand charged by indictment with the first-degree felony offense of aggravated assault on a public servant. Do you understand exactly what you're charged with?

THE DEFENDANT: Yes, sir.

THE COURT: Have you gone over the indictment and have you discussed the allegations with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the range of punishment for this first-degree felony offense?

THE DEFENDANT: Yes, sir.

THE COURT: Are you a citizen of the United States of America?

THE DEFENDANT: Yes, sir.

THE COURT: You have the right to a trial by jury. Do you wish to waive or give up that right or do you wish to have a jury trial?

2

THE DEFENDANT:  Waive.

THE COURT:  Is your client mentally competent?

[DEFENSE COUNSEL]:  Your Honor, he is mentally competent, and I would ask the Court to take judicial notice of the letter that is in the file of his evaluation.

THE COURT:  The Court will so notice.  Is the defendant going to testify?

[DEFENSE COUNSEL]:  He is, Your Honor. [Defendant takes oath]. . . .  Comes now defendant, admits that his true name is Jarrett Lockridge, waives reading of the indictment, right to jury trial, giving that right up freely and voluntarily and entering his plea of guilty.

THE COURT:  Are you pleading guilty freely and voluntarily?

THE DEFENDANT:  Yes, sir.

The judicially-noticed letter was prepared by Dr. Lisa Clayton, the psychiatrist who was ordered by the trial court to evaluate Appellant for the purposes of determining his competency to stand trial and whether he suffered from any mental illness.  In the evaluation, Dr. Clayton set forth her professional conclusions that Appellant:  (1)  understood the charges and possible penalties in the case; (2) understood the adversarial nature of the proceedings; (3) was able to disclose information regarding both the underlying facts and events as well as his state of mind at the time of the alleged offense; (4) had the ability to engage in reasonable choices of legal strategies and options concerning his case; (5) had the ability to testify relevantly and exhibit appropriate courtroom behavior; and (6) had a  rational as well as factual understanding of the charge, the legal processes, and the roles of courtroom personnel.  Dr. Clayton also stated that it was her professional opinion that Appellant would be mentally competent as long as he remained on his medication for schizophreniform disorder.

Upon the conclusion of Officer Carter's testimony, Appellant testified that defense counsel

3

had discussed with him: (1) his right to a jury trial; (2) his right to enter an open plea of guilty; and (3) the State's offer of a 15-year sentence. In response to defense counsel's questioning, Appellant showed that he had a tenth-grade education and worked moving furniture. Appellant acknowledged that defense counsel had Appellant evaluated by a doctor who had diagnosed Appellant with schizophrenia and had provided him with medication. Appellant testified that he was taking the medication at the time of the plea. He testified that his parents had never had him evaluated by a psychologist and that he had not been diagnosed with schizophrenia until he went to jail. Appellant also affirmed that he had told defense counsel that he wanted to enter an open plea.

During closing arguments, defense counsel noted that Appellant was 18 at the time of the offense and saw his mother "getting attacked." Noting that, since the offense, Appellant had been diagnosed with schizophrenia and was "not all there," defense counsel argued that these factors should be considered for the purpose of mitigating Appellant's punishment. Defense counsel informed the trial court that Appellant needed help and did not need to go to the penitentiary because he would be worse off when he was released. He likewise argued that the trial court should consider Appellant's lack of medical attention and medical diagnosis prior to the commission of the offense, and then asked the trial court to "get him the help he needs."

The trial court accepted Appellant's plea of guilty, found him mentally competent to enter his plea of guilty, and sentenced him to 18 years' confinement.

## DISCUSSION

In two issues, Appellant complains that he did not knowingly and voluntarily plead guilty and that he suffered ineffective assistance of counsel because his trial attorney failed to properly develop and present mitigating evidence pertaining to his mental illness.

4

*Voluntariness of the Plea*

The Constitution requires a guilty plea to be made knowingly and voluntarily. *See Brady v. United States,* 397 U.S. 742, 748-49, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Elliott v. State,* 874 S.W.2d 238, 239 (Tex. App.–El Paso 1994, no pet.). Article 26.13 of the Texas Code of Criminal Procedure safeguards this mandate by ensuring that an individual who pleads guilty comprehends both the charges against him and the consequences of his plea. TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon 2009); s*ee Meyers v. State,* 623 S.W.2d 397, 402 (Tex. Crim. App. 1981); *Elliott,* 874 S.W.2d at 239; *Basham v. State,* 608 S.W.2d 677, 678 (Tex. Crim. App. 1980); *Singleton v. State,* 986 S.W.2d 645, 649 (Tex. App.–El Paso 1998, pet. ref'd). Under this provision, the trial court is required to admonish a criminal defendant of certain facts and rights prior to accepting a plea of guilty. TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon 2009). A trial judge need only substantially comply with the dictates of Article 26.13(c) and is under no requirement to follow a strict formula or ask a specific set of questions to achieve such compliance. *Estrada v. State,* 981 S.W.2d 68, 70 (Tex. App.–San Antonio 1998, pet. ref'd); *Singleton,* 986 S.W.2d at 650. Article 26.13(d) allows the admonitions to be made either orally or in writing and, if made in writing, both the defendant and defense counsel must sign a statement indicating the defendant understands the admonitions and is aware of the consequences of the plea. TEX. CODE CRIM. PROC. ANN. art. 26.13(d) (Vernon 2009); *Meraz v. State,* 950 S.W.2d 739, 742 (Tex. App.–El Paso 1997, no pet.); *Blanco v. State,* 771 S.W.2d 598, 599 (Tex. App.–Corpus Christ 1989, no pet.). When the record reveals that the trial court properly admonished the defendant regarding the consequences of his plea, the record presents a *prima facie* showing the defendant entered a knowing and voluntary plea. *Fielding v. State*, 266 S.W.3d 627, 636 (Tex. App.–El Paso 2008, pet. ref'd). The burden then shifts to the defendant to

show the plea was not voluntary, that is, that he pleaded guilty without understanding the consequences of his plea and that he therefore suffered harm. *Id.*

*Analysis*

In the case at bar, the record shows that Appellant entered into a non-negotiated plea. Appellant and defense counsel executed two written documents, a non-negotiated plea agreement and a judicial confession. At the plea hearing, the trial court advised Appellant of the charges against him and Appellant informed the trial court that he had reviewed and discussed the allegations with his attorney. The trial court informed Appellant of his right to be tried by a jury and informed the trial court that he wished to waive that right. Appellant informed the trial court that he understood the range of punishment for this first-degree offense. In response to defense counsel's questions, Appellant indicated that he understood that the State had offered him a plea bargain agreement with a 15-year sentence, and that the trial court could impose a sentence of confinement ranging from five years to [ninety-]nine years or life. The trial court inquired about Appellant's mental competence and took judicial notice of Dr. Clayton's assessment of Appellant, which included her professional conclusion that Appellant was mentally competent to participate in his legal proceedings as long as he remained on his medication. During the plea proceedings, Appellant testified that he was "on those medications" and informed the trial court that he was freely and voluntarily pleading guilty.

Because the record contains a *prima facie* showing that Appellant was duly admonished regarding the voluntariness of his plea, the burden shifts to Appellant to show that his plea was not voluntarily entered. *Fielding*, 266 S.W.3d at 636. Some of Appellant's assertions on appeal, such as "the overwhelming sense the reader gets from the questioning is that Appellant's attorney coached

6

[him]," are of a purely speculative character and have no factual basis in the record. Nor do we find in the record any evidence that Appellant complained to the trial court that his plea was not knowingly, freely, or voluntarily made. The record does not show that Appellant or defense counsel ever expressed to the trial court any dissatisfaction with the plea during the proceedings . Because Appellant stated that he was currently taking the medication necessary to render him mentally competent, we find that his competency is not at issue in determining whether his plea was voluntarily made. We also note that the trial court was able to assess Appellant's demeanor, credibility, and answers during the proceedings. From a cold record, we cannot.

Having considered the record and Appellant's contentions, we are compelled to find that Appellant has not met his burden of showing that he did not possess the requisite awareness of the proceedings or the likely consequences thereof. *Fielding*, 266 S.W.3d at 636. Consequently, because the record demonstrates that Appellant was aware of the consequences of his plea, we must conclude that Appellant knowingly and voluntarily entered his plea of guilt. *Brady,* 397 U.S. at 748-49; *Elliott,* 874 S.W.2d at 239. We overrule Appellant's first issue.

*Ineffective Assistance of Counsel*

In his second issue, Appellant contends that defense counsel failed to properly develop and present mitigating evidence pertaining to his mental illness, thereby depriving him of the effective assistance of counsel. Appellant specifically complains that defense counsel should have presented expert and other witnesses such as family, friends, and school teachers and counselors to explain why Appellant's mental illness was the cause of his inappropriate behavior and why Appellant was unlikely to commit future offenses since being diagnosed and treated for schizophreniform disorder.

When determining whether counsel's representation was inadequate so as to violate a

7

defendant's Sixth Amendment right to counsel, we adhere to the two-pronged test set forth in *Strickland*. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997), *abrogated by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998); *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Second, assuming Appellant has demonstrated deficient assistance, he must prove prejudice. *Strickland*, 466 U.S. at 687; *McFarland*, 928 S.W.2d at 500; *Thompson*, 9 S.W.3d at 813. In short, Appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez*, 726 S.W.2d at 55. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim and prevents us from concluding that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Menchaca*, 854 S.W.2d at 131. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional

assistance. *Strickland*, 466 U.S. at 687-88; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In determining the validity of Appellant's ineffective assistance claim, our review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). We must look to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex. Crim. App. 1979); *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991).

A claim for ineffective assistance of counsel may not be predicated upon a failure to call witnesses unless Appellant shows that such witnesses were available and that their testimony would have benefitted the Appellant. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Ex parte Cruz*, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999); *Ex parte McFarland*, 163 S.W.3d 743, 758 (Tex. Crim. App. 2005). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland*, 928 S.W.2d at 500. However, the record on direct appeal is typically insufficient for an appellate court to fairly evaluate a claim of ineffective assistance of counsel because the reasonableness of counsel's choices often involve facts that do not appear in the appellate record. *Jackson v. State,* 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). In many cases, where an Appellant does not challenge a claim of ineffective assistance before the trial court, it is proper for the appellate court to overrule an Appellant's Sixth Amendment claim without prejudice to Appellant's ability to dispute counsel's effectiveness collaterally. *See Thompson,* 9 S.W.3d at 814. Of course, in the rare case

9

where the record on direct appeal is sufficient to prove that counsel's performance was deficient, an appellate court should obviously address the claim in the first instance. *Id.*

*Analysis*

Appellant contends that defense counsel should have called additional witnesses in mitigation of punishment. However, there is nothing in the record to show that they would have been called as witnesses, that they were available to testify, or that their testimony, if any, would have proven beneficial to Appellant.

The record in all other respects is silent as to why Appellant's trial counsel did not call witnesses during the punishment phase of the plea. Therefore, Appellant has failed to rebut the presumption this was a reasonable decision. *Strickland*, 466 U.S. at 699-700. We must be especially hesitant to declare counsel ineffective when the record provides no discernible explanation of the motivation behind counsel's acts or omissions. *Thompson,* 9 S.W.3d at 814. For an undetermined reason, counsel did not call punishment witnesses, and only further inquiry will provide the information necessary to make the proper determination that defense counsel did or did not provide the effective assistance envisioned under the Sixth Amendment. *Id.*

We do not decide, therefore, that Appellant did or did not receive the effective assistance of counsel during trial. Rather, we find that the record as it exists on direct appeal is insufficient to support Appellant's second issue. We overrule Appellant's second issue.

**CONCLUSION**

Having overruled Appellant's issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

10

March 17, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)